254 HAZEN *v.* MASSACHUSETTS MUTUAL LIFE INS. CO. [170

the necessities of the children of Mrs. Balcom and of the sons, as there is in Mrs. Balcom's case, and there is no reason therefore for construing the word "income" as meaning the income which the sub-trustee was directed to pay to her. We think, therefore, that by the words "income herein ordered to be paid to her," in the 20th item, clause 4, is meant the income which the principal trustee is ordered by clause 2, item 18, to pay to the sub-trustee for Mrs. Balcom, and that the sub-trustee has no discretion as to its payment, but is bound to pay it over as he receives it.                    *Decree accordingly.*

L. Tracy Hazen *vs.* Massachusetts Mutual Life
Insurance Company.

Middlesex.    December 8, 9, 1897. — January 17, 1898.

Present: Field, C. J., Holmes, Morton, Lathrop, & Barker, JJ.

*Life Insurance — Non-forfeiture Law — "Surrender Value" of Policy —*
*Obligation of Insurer to Pay — Action by Assured.*

A policy of insurance was issued in 1884 upon the life of A., the premiums to be paid in twenty annual payments. The insurance was payable to A.'s executors, administrators, or assigns "for the express benefit of B., his wife, and his surviving children, if neither wife (the said B.) nor children are living, then to the executors, administrators, or assigns of" A. After having paid thirteen annual premiums, A. offered to surrender the policy and demanded of the insurer payment of its surrender value, his wife and children, all of whom were of full age, joining in the application; but the insurer refused to pay it. *Held*, that, under Pub. Sts. c. 119, §§ 164, 165, an obligation to pay the surrender value in cash arose upon A.'s offer; and that A. could maintain an action to recover the same.

Contract, to recover the surrender value of a policy of insurance issued by the defendant upon the life of the plaintiff. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, the material parts of which appear in the opinion.

*C. C. Mayberry & N. D. A. Clarke*, for the plaintiff.

*G. Wells*, for the defendant.

Barker, J.    The policy which the plaintiff holds was written by a home company on April 29, 1884, and is governed by the

statute provisions commonly known as the Massachusetts non-forfeiture law of 1880. See St. 1880, c. 232; Pub. Sts. c. 119, §§ 159–166. The provisions now to be construed were set forth as follows, in Pub. Sts. c. 119, §§ 164, 165:

" Sect. 164. When after the payment of two full annual premiums as provided in section one hundred and sixty-one, (that is, ' in cash or note, or both,') the insurable interest in the life of the insured has terminated, the net value of the policy, subject to the conditions named in section one hundred and sixty-two, shall be a surrender value payable in cash; and upon the termination of such insurable interest the holder of a policy upon which by its terms no further premiums are payable may upon any anniversary thereof claim and recover in cash from the company a surrender value computed as aforesaid; but upon policies of prudential or industrial insurance, on which the premiums are five cents per week and upwards, but not exceeding fifty cents, the surrender value shall in all cases be payable in cash.

" Sect. 165. The insurable interest named in the preceding section shall be construed to have terminated when the insured has no minor or dependent child; and his wife, if he has one, and any living beneficiary or beneficiaries named in the policy, shall join in the application for surrender thereof."

The non-forfeiture law of 1880 was a further application of the theory, which had earlier practical illustration in the Massachusetts non-forfeiture law of 1861, (St. 1861, c. 186,) and which asserts that in life insurance the insured should be deemed the equitable owner of some part of the money which he has paid as premiums; and that when his insurance is forfeited or annulled by non-payment of premiums, a portion of the amount which he has so paid to the insurer for future insurance should be applied in giving insurance notwithstanding the forfeiture; and also that upon his voluntary surrender of his right longer to be insured the insurer should return to him so much of the money which he has paid as under the theory is deemed equitably his own. The St. 1861, c. 186, merely required the insurer to give temporary insurance after the forfeiture, for a period fixed by the amount of the fund which was deemed to belong equitably to the insured. The non-forfeiture law of 1880 required the insurer to give paid up insurance for an amount fixed

by a similar method, and also provided for a surrender value payable in cash, which under some circumstances the holder of the policy could demand and recover. Whether he can do so in this instance is the question here. Further legislation in the same direction is found in the general insurance acts of 1887 and of 1894. See St. 1887, c. 214, § 76; St. 1894, c. 522, § 76. See also St. 1896, c. 470.

The policy which the plaintiff holds is for the term of his life, although the whole money consideration is to be paid in twenty annual premiums. The insurance is payable to his executors, administrators, or assigns, "for the express benefit of Ellen F. Hazen, his wife, and his surviving children, if neither wife (the said Ellen F.) nor children are living, then to the executors, administrators, or assigns of the said L. Tracy Hazen." He has paid thirteen annual premiums, and the surrender value of the policy was $3,485.50 on April 29, 1897. The wife, Ellen F. Hazen, was then living, and the plaintiff had four children only, all of whom were of full age. He then duly offered to surrender the policy, and demanded payment of its surrender value of the defendant, his wife and children all joining in the application; but the defendant refused to pay it.

The defendant contends that, as the plaintiff may leave other children surviving him, and that as any such child will be entitled by the terms of the policy to share in the insurance payable after his death, the case is not within the statute; and further, that if the defendant is bound by force of the statute to pay a surrender value, the plaintiff has not the right to recover it, and that it belongs, not to the plaintiff, but to the beneficiaries who would become entitled to the insurance upon his death.

The language of St. 1880, c. 232, §§ 4 and 5, is obscure, and it was transferred to Pub. Sts. c. 119, §§ 164 and 165, at a time when there had been no settled construction of its meaning. We are aware of no subsequent decisions of the courts bearing upon the present question. The words "shall be a surrender value payable in cash," in St. 1880, c. 232, § 4, and in Pub. Sts. c. 119, § 164, must be held to import an obligation imposed upon the insurer to pay to some one, upon the surrender of the policy under the circumstances named in the statute, an amount or "value" to be fixed in the method directed by the stat-

ute. This obligation arises " when after the payment of two annual premiums . . . (in cash or note, or both) the insurable interest in the life of the insured has terminated." As most life policies are issued either to the person whose life is insured or to his relatives, who have an insurable interest while he lives, if the words quoted stood alone, the obligation to pay a surrender value seldom could arise; never, when the policy was upon the insured's own life, and only when the interest of the insured in the life insured actually had terminated. But that such was not the intention is shown by the provisions of the succeeding section, which prescribes an arbitrary rule by which the insurable interest " shall be construed to have terminated." These provisions taken together mean that the obligation to pay a surrender value shall arise, not only when the insurable interest of the insured in the life insured has terminated in fact, but also when by the given rule that interest terminates by construction, although the circumstances mentioned in the rule otherwise might have no effect upon " insurable interest." In other words, an obligation to pay a cash surrender value is imposed, not only when the insurable interest actually has terminated, but also when the insured has no minor or dependent child, and his wife, if he has one, and all living beneficiaries named in the policy, join in the application for surrender. The policy is written under this statute, and its terms enter into the contract, and the rights of every possible beneficiary are subject to the operation of the statute, and are liable to be annulled thereby. We think, therefore, that an obligation to pay the surrender value in cash arose upon the plaintiff's offer, in which his wife and all living beneficiaries joined.

The remaining question is whether the cash surrender value can be recovered by the plaintiff. The statute does not explicitly designate the person who in every instance may recover the surrender value, if the insurer refuses to pay. The explicit provision that the holder of the policy may claim and recover the surrender value applies only to the cases in which by the terms of the policy no further premiums are payable. But the holder of the policy must be the chief actor in surrendering it. Beneficiaries, so far as the statute requires them to act, are only to join in the application to surrender. There are as likely to

be beneficiaries other than the holder of the policy, in those instances in which by its terms no further premiums are payable, as in those where the statute does not expressly point out who may claim and recover the surrender value. The theory of the legislation is that the money to be paid is a fund created by the payment of premiums, and that it is to be considered as justly belonging to the insured, who has paid them. Logically, he is the one to claim and recover this fund, which is deemed his own, although the insurance was made payable to his beneficiaries. In prudential and industrial insurance, where all policies between certain ranges of premium have a cash surrender value under the statute, without regard either to actual or constructive termination of insurable interest, the amounts are so small and the circumstances are such that, unless the holder of the policy can himself claim and recover the surrender value, the right often would be practically worthless. In many instances, as in the present, the right of any beneficiary other than the holder of the policy is contingent upon surviving the insured. Living beneficiaries are protected by making it necessary for them to join in the application for surrender. The statute does not say that they may have the payment or may recover in any case. It could not have been intended that payment of the surrender value could be made, or its recovery by suit, if the insurer should refuse to pay, be enforced only upon the appointment of some one to act for beneficiaries not in being. We do not deem it necessary to discuss the effect of the further circumstance, that all the companies whose policies are written under the statute are mutual companies, and that usually, as in the present instance, the holder of the policy is a member of the company. Upon the whole, we think it a fair implication that the Legislature intended that, in all cases in which the obligation to pay a cash surrender value was imposed by the statute, the holder of the policy may claim and recover the sum due. This conclusion is strengthened by the fact that the insurance acts of 1887 and of 1894 expressly designate the holder of the policy as the person to claim and recover the surrender value of policies written after those acts took effect. See St. 1887, c. 214, § 76; St. 1894, c. 522, § 76; St. 1896, c. 470.

*Judgment for the defendant set aside, and judgment to be entered for the plaintiff upon the facts agreed.*