## SAMPSON v. UNITED STATES.
### No. 4356.

District Court, D. Massachusetts.
Aug. 19, 1932.

Hutchins & Wheeler, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

This is an action by the executor under the will of John A. Barbour to recover a portion of the federal estate tax, paid by the plaintiff. Claim for refund was duly filed and was rejected, resulting in this petition.

John A. Barbour died January 9, 1925. He had taken out on his life fourteen policies of insurance, all of which were dated prior to 1918. These policies were reported in the executor's estate tax return, but the proceeds were not included in the taxable estate. Later the plaintiff received notice that $198,676.09 had been added to the gross estate. This additional sum represented the proceeds, less $40,000 specifically exempt, of eleven of these policies and one-half of the proceeds of three other policies. The tax first determined to be due amounted to $7,181.20, which sum the plaintiff paid. Later the correct amount of the tax was found to be $6,960.16, but in the final audit the same sum of $198,676.09 was included in the decedent's gross estate with respect of the fourteen policies of life insurance.

The Commissioner of Internal Revenue, in making his determination, proceeded under the Revenue Act of 1924 (43 Stat. 304, 305). The pertinent provisions read as follows:

"Sec. 301. (a) In lieu of the tax imposed by Title IV of the Revenue Act of 1921, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this Act, whether a resident or nonresident of the United States." (26 US CA § 1092 note.)

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

"(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act." (26 USCA § 1094 note.)

■ The corresponding section of the Revenue Act of 1921, § 402(f) came before the court in Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388, and it was there held that, if the insured had reserved a right to change the beneficiary, the proceeds of policies of life insurance in excess of $40,-000 received by a beneficiary other than the personal representatives of the insured were properly included in decedent's gross estate. In the case at bar, in six of the fourteen policies (Exhibits 1, 2, 5, 6, 10, 11) the insured had unquestionably reserved the right to change the beneficiary. The proceeds of these six policies aggregated $153,754.90. As to these, the doctrines of Chase National Bank v. United States, supra, control. I do not understand that the plaintiff seriously contends otherwise.

■ A policy issued by the New York Life Insurance Company raises the preliminary question whether the insured had, up to the time of his death, a power to change his beneficiary. The policy provided as follows: "Change of Beneficiary.—When the right of revocation has been reserved, or in case of the death of any beneficiary under either a revocable or irrevocable designation, the Insured, if there be no existing assignment of the Policy made as herein provided, may while the Policy is in force, designate a new beneficiary, with or without reserving the right of revocation by filing written notice thereof at the Home Office of the Company, accompanied by the Policy for suitable endorsement thereon."

It appears that the insured, on December 10, 1918, changed the beneficiary, designating his daughter instead of his wife. In this designation of a new beneficiary, he did not reserve the right of further revocation. The plaintiff contends that by this act the decedent exhausted his power under the policy to change the beneficiary, and that, after December 10, 1918, he was without any reserved power to thereby control the proceeds. I think this contention has merit. As I read the clause in the policy, quoted above, it was necessary that the insured expressly reserved the right to revoke his designation of his daughter. Since he failed to do this, his right to substitute another beneficiary was ended. Reed v. Commissioner, 24 B. T. A. 166. I therefore include this policy in the class of those in which no power to change the beneficiary was reserved to the insured.

The following table shows the eight policies of this class:

| Exhibit | Name of Company | Beneficiary | Date | Proceeds |
|---|---|---|---|---|
| No. 3. | Mutual Life Ins. Co. of N. Y. | Sadie L. Barbour | Nov. 1, 1894 | $ 5,065.83 |
| No. 4. | Mutual Life Ins. Co. of N. Y. | Sadie L. Barbour | Jan. 7, 1897 | |
| No. 7 | Conn. Mutual Life Ins. Co. | Sadie L. Barbour | Dec. 4, 1906 | 19,984.56 |
| No. 8 | Conn. Mutual Life Ins. Co. | Sadie L. Barbour | Dec. 4, 1906 | |
| No. 9. | New York Life Ins. Co. | Corinne E. Booth | Jan. 5, 1916 | 9,538.24 |
| No. 12. | Union Central Life Ins. Co. | Perley E. Barbour | Feb. 10, 1915 | 50,453.62 |
| No. 13. | Prudential Life Ins. Co. of Am. | Perley E. Barbour | Apr. 7, 1916 | 50,211.50 |
| No. 14. | Prudential Life Ins. Co. of Am. | Perley E. Barbour | Apr. 7, 1916 | |

Total Proceeds ........................................................ $135,253.75

Sadie L. Barbour was the wife, Corinne E. Booth, the daughter, and Perley E. Barbour the brother and business partner of the deceased.

All policies were taken out by the decedent on his own life. He paid the premiums on all except the last three (Exhibits 12, 13, and 14) which were paid by a partnership of which he and Perley E. Barbour were the only members. All the policies were ordinary life policies, continuing until the death of the insured. The several beneficiaries named in the policies all survived the insured.

Exhibit No. 4 was made payable to Sadie L. Barbour, her executors, administrators, or assigns.

Exhibit No. 12 was made payable to Perley E. Barbour. There was no express provision in the policy that the proceeds should be paid to the personal representatives of the insured in the event that he survived the beneficiary.

Exhibits Nos. 13 and 14 were payable, in event of death, as follows: "To Perley E. Barbour, Beneficiary, Brother of the Insured, if said Perley E. Barbour survive the Insured, otherwise to Mary A. Barbour, Beneficiary, Sister-in-Law of the Insured, if said Mary A. Barbour survive the Insured, or, if both of said Perley E. Barbour and Mary A. Barbour shall have predeceased the Insured, to Walter G. Barbour, Richard H. Barbour and John Barbour, Beneficiaries, Nephews of the Insured, share and share alike, or the survivors or survivor of said Walter G. Barbour, Richard H. Barbour and John Barbour at the time of the death of the Insured, or, if all of said Perley E. Barbour, Mary A. Barbour, Walter G. Barbour, Richard H. Barbour and John Barbour shall have predeceased the Insured, to the executors, administrators or assigns of the Insured."

The remaining four policies (Exhibits Nos. 3, 7, 8, 9) were each payable to the estate of the insured if the beneficiary named did not survive the insured.

The provisions of the policies relative to cash surrender value varied in form. They were as follows:

Exhibits Nos. 3 and 4. "Surrender for Cash Value.—This policy may be surrendered to the Company at the end of the said first period of twenty years, and the full reserve computed by the American Table of Mortality, and four per cent interest, and the surplus as defined above, will be paid therefor in cash."

Exhibits Nos. 7 and 8. "Cash Surrender Value. Upon surrender and satisfactory release of this Policy by John A. Barbour within thirty days after the end of any period (reckoned from the date first above named) specified in the Table of Cash Values printed hereon, the Company agrees to pay to him the Cash Value specified therein, provided that this Policy be in force for the full amount above named."

Exhibit No. 9. "Benefits on Surrender or Lapse.—After two full annual premiums shall have been paid, the Insured may within three months after any default in payment of premium, but not later, surrender the Policy, and receive its Cash Surrender Value less any indebtedness to the Company hereon. The Cash Surrender Value shall be the reserve on this Policy, at the date of default (omitting fractions of a dollar per thousand of insurance) and the reserve on any Paid-Up Additions thereto, and any dividends standing to the credit of this Policy, less a surrender charge which in no case shall be more than one and one-half per centum of the sum insured. After premiums have been paid for ten years or more there will be no surrender charge. The reserve will be computed according to the American Table of Mortality and interest at the rate of three per centum per annum."

Exhibit No. 12. This policy provides that, after three full years' premiums have been paid, the reserve value at the end of the policy year, computed according to the American Experience Table of Mortality at $3\frac{1}{2}$ per cent., may be used at the option of the owner of this policy in any one of several ways, all of equal value, as set forth in the appended table. Among these options is the following:

"Option 4—Cash. Collected in cash on written surrender of the policy before the expiration of the days of grace (Table 4). Payment may be deferred by the Company sixty days."

Exhibits Nos. 13 and 14. "Cash Surrender Value—If this Policy be legally surrendered to the Company within three months after the end of the third year from its date or of any year thereafter, and if all premiums to the end of that year have been paid in full, the Company will pay therefor the sum indicated by the following table, less any indebtedness to the Company on account of this Policy. The Company reserves the right to defer the payment of any Cash Surrender Value for a period not exceeding ninety days after application for such Cash Surrender Value."

Four policies (Exhibits Nos. 3, 4, 7, 8) contained no provisions as to loans. The other four (Exhibits Nos. 9, 12, 13, 14) provided that the insured could borrow on the security of the policy up to the amount of the cash surrender value.

The government contends that these eight policies must be included in the gross estate of the decedent. I agree that the statute is broad enough to embrace within its terms any policy of insurance taken out by an insured on his own life and made payable to a beneficiary other than the estate of the insured. The language is explicit and leaves no room for fine distinctions based on the provisions of the particular contract of insurance. The policies involved in this action all come within the terms of the statute. The three policies, the premiums on which were paid by the partnership, were all applied for by John A. Barbour and were payable not to the firm but to Perley E. Barbour without rendering the beneficiary accountable to the firm for the proceeds. Under these circumstances I do not think the fact that the premiums were paid by the partnership places the policies beyond the scope of the statute. Apparently the Commissioner took the position that, as only one-half of the premiums were paid by the decedent, only one-half of the proceeds should be included. Whether the position is tenable is not now an issue in this case. I am therefore of the opinion that the proceeds of the eight policies shown in the above table were properly included, if the statute can be sustained as a lawful exercise of the powers of Congress to levy taxes upon the estates of deceased persons. This, I take it, is the issue upon which the rights of the parties are to turn. We are not now concerned with the authority of Congress to lay a specific excise tax upon the proceeds of life insurance received by the beneficiary. Rather, the question is whether such proceeds can properly be taken to measure a transfer tax laid upon estates of deceased persons. Gifts inter vivos, made subsequent to the enactment of the law imposing the tax, may be an appropriate subject of taxation by the federal government. Bromley v. McCaughn, Collector, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226.

But it is doubtful whether such gifts, completed during the life of the donor, could be lawfully brought into the gross estate of a decedent for the purpose of measuring a tax upon his estate. I should expect such an attempt to fail for the reason that the transfer would have no reasonable relation to the event of death. Nichols, Collector v. Coolidge et al., Ex'rs, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Reinecke, Collector, v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; May et al., Ex'rs, v. Heiner, Collector, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244.

The due process of law guaranteed by the Fifth Amendment to the Constitution forbids any attempt to measure a tax on one person's property by reference to the property of another. Hoeper v. Tax Commission of Wisconsin, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248; Lewis v. White, Collector (D. C.) 56 F.(2d) 390. Compare Blodgett v. Holden, Collector, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206.

While in the Hoeper Case the court declared a state statute to be in contravention of the Fourteenth Amendment, it has very recently been noted that "the restraint imposed upon legislation by the due process clauses of the two amendments [Fifth and Fourteenth] is the same." Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 361, 76 L. Ed. 772.

We have seen that a fully completed gift inter vivos not made in contemplation of death in fact cannot by legislative fiat be declared to be a gift in contemplation of death and thus included in a decedent's gross estate for purposes of taxation. Heiner v. Donnan, supra; White, Collector v. Hall (C. C. A.) 53 F.(2d) 210, certiorari denied 285 U. S. 553, 52 S. Ct. 410, 76 L. Ed. 943.

The second sentence of section 302(g) can be upheld only if the payment of the proceeds of life insurance to a beneficiary other than the insured's estate bears such a reasonable relation to the event of death that an estate tax may appropriately be imposed, measured in whole or in part by the value of such proceeds.

In Chase National Bank v. United States, supra, the court, referring to the reserved right to change beneficiaries, observed: "Until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the

termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled."

The question thus presented was resolved in favor of the taxability of the policies.

■ We are now asked to extend this principal of law to the proceeds of policies which make no provision for a change of beneficiary but which provide for cash surrender value, for loans and for payment to the estate of the insured if the beneficiaries do not survive. It was intimated in the Chase National Bank Case, at page 335 of 278 U. S., 49 S. Ct. 126, that the retention by the decedent of the right to surrender or to pledge the policy was among the substantial legal incidents of ownership. There is something to be said for the proposition that the payment of insurance to a named beneficiary has a very direct relation to the event of death. Until that event occurs, no economic benefits accrue to the beneficiary. Doubtless the right to surrender the policy, or the right to borrow upon it, does not give the same degree of control over the entire proceeds as the right to change the beneficiary; nevertheless, the insured may defeat the provisions made to the beneficiary by surrendering the policy, or he may materially diminish the amount of the proceeds by borrowing. Upon the event of death depends (1) whether the beneficiary survives, (2) whether the policy is still in force, (3) how much the beneficiary will receive.

The plaintiff takes the position that none of the policies could be surrendered for cash or pledged without the consent of the beneficiary. I find nothing in the policies to support this contention. It is true the statutes of Massachusetts provide that policies issued by domestic companies shall provide for a cash surrender value which can be paid only upon the written assent of the beneficiary, but the only policy among the fourteen policies issued by a domestic company was that issued by the John Hancock Life Insurance Company, which was one of the policies in which the decedent reserved the right to change the beneficiary and would be properly included on the authority of Chase National Bank v. United States, supra.

Moreover, it was held in Hazen v. Mutual Life Ins. Co., 170 Mass. 254, 49 N. E. 119, that, while the beneficiary must join in the application for surrender, the cash surrender value belonged to the policyholder who was entitled to recover that value.

It is not necessary that there should be an immediate "transfer," in the strict sense of the word, of property by death or a receipt of it by right of succession. If the death terminated some right, power, or interest of the deceased in the property or "brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit)" such tax may be "measured, in whole or in part, by the value of such rights." Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 359, 74 L. Ed. 991, 69 A. L. R. 758.

In that case Mr. Justice Sutherland further remarked that, "if the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way."

The benefits accruing to the beneficiary were not, until the insured died, freed of the possibility of the exercise by him of his rights under the policies. These rights or powers were terminated by his death. This termination and the corresponding ripening of the benefits secured to the beneficiary by the contract are results upon which Congress may, I take it, impose a tax in the nature of death duty or transfer tax.

The fact that the interests of the beneficiary in the contract may be deemed to be "vested" is apparently not decisive of the question here presented. Chase National Bank v. United States, supra.

■ Nor does the fact that the policies antedated the enactment of the Revenue Act of 1924 require a different conclusion. This decedent did not die until after the effective date of the law imposing the tax, and the shifting of economic benefits did not take place before the tax was imposed. The statute in 302(h) expressly applies to transfers, interests, rights, and powers and relinquishment of powers "whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act." I think that subdivision (h) should be given effect. Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809; Reinecke, Collector, v. Northern Trust Co., supra; Heiner v. Grandin (C. C. A.) 44 F. (2d) 141.

My conclusion, therefore, is that it was competent for Congress to enact legislation which would bring into the decedent's gross estate the value of proceeds in excess of $40,000 of policies of life insurance taken out on the life of a decedent and payable to a beneficiary other than decedent's estate. The statute being within the power of Congress, the action of the Commissioner in including the fourteen policies was not unlawful or erroneous.

The conclusion which I have reached in the case at bar appears to be in accord with decisions of the Board of Tax Appeals in the cases of Ballinger v. Commissioner, 23 B. T. A. 1312 and Sally S. Levy et al., Ex'rs, v. Commissioner, 25 B. T. A. 1174.

Since the plaintiff has paid $221.04 more than was finally determined to be due, he is entitled to a judgment for that amount.

Judgment for the plaintiff may be entered in the sum of $221.04 with interest from July 9, 1926.