## CHASE NATIONAL BANK ET AL. *v.* UNITED STATES.

No. 77. Argued November 27, 28, 1928.—Decided January 2, 1929.

*Messrs. Dallas S. Townsend* and *Wm. Marshall Bullitt,* with whom *Mr. Henry Walton Proffitt* was on the brief, for The Chase National Bank et al.

330

*Mr. Alfred 'A. Wheat,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. L. L. Hamby* filed a brief as *amicus curiæ,* by special leave of Court.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here from the Court of Claims, under § 288, Title 28, U. S. Code, 43 Stat. 939, on certified questions of law concerning which instructions are desired for the proper disposition of the cause. The facts certified are: on September 13, 1922, after the effective date of the Revenue Act of 1921, Herbert W. Brown procured three insurance policies on his life aggregating $200,000, each naming his wife as beneficiary. Each policy re-

served to the insured the right to change the beneficiary. All premiums on the policies were paid by the insured. On April 10, 1924, he died testate, leaving the plaintiffs below his executors and an estate subject to the estate tax imposed by the Revenue Act of 1921, c. 136, 42 Stat. 227. The tax as assessed by the commissioner included $9,146.76 imposed by reason of the inclusion in the estate of the proceeds of the three insurance policies, less $40,000 exemption authorized by the statute. The executors paid the tax and, upon denial of a claim for refund, brought, the present suit in the Court of Claims to recover the tax as illegally assessed.

The questions certified are:

Question I: Whether the tax imposed by the final clause of section 402 (f), Revenue Act of 1921, 42 Stat. 278, on life insurance policies payable in terms to beneficiaries "other than the decedent or his estate" is a direct tax on property and void because not apportioned.

Question II: Whether the $9,146.76 tax imposed bears such an unreasonable relation to the subject matter of the tax as to render it void.

Similar questions were mooted by counsel, but not decided, in *Lewellyn* v. *Frick*, 268 U. S. 238, 251.

Section 401 of the Revenue Act of 1921 imposes a tax upon "the transfer of the net estate of every decedent" dying after the passage of the act, and § 402 provides: "That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . . tangible or intangible . . . (f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent

upon his own life." By § 406 the executor is required to pay the tax, but, if so paid, he is given by § 408 the right to recover from the beneficiaries a part of the tax, and by § 409 they are made personally liable for a share of it if not so paid.

In the present case there is no question of the construction of the statute. The tax is plainly imposed by the explicit language of §§ 401 and 402 (f) if those sections are constitutionally applied. Plaintiffs challenge the validity of the tax on the ground that it is not an excise or privilege tax but a direct tax on property, the insurance policies or their proceeds, and so is invalid because not apportioned as required by Art. I, §§ 2, 9 of the federal Constitution, and that in any case the measure of the tax and the methods of securing its payment are so arbitrary and capricious as to violate the due process clause of the Fifth Amendment.

The statute in terms taxes transfers. Like provisions in earlier acts have been generally upheld as imposing a tax on the privilege of transferring the property of a decedent at death, measured by the value of the interest transferred or which ceases at death. Cf. *Y. M. C. A.* v. *Davis*, 264 U. S. 47, 50; *Edwards* v. *Slocum*, 264 U. S. 61, 62; *New York Trust Co.* v. *Eisner*, 256 U. S. 345, 349; *Nichols* v. *Coolidge*, 274 U. S. 531.

It is true, as emphasized by plaintiffs, that the interest of the beneficiaries in the insurance policies effected by decedent " vested " in them before his death and that the proceeds of the policies came to the beneficiaries not directly from the decedent but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the

possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, *Cohen* v. *Samuels,* 245 U. S. 50 (see *Burlingham* v. *Crouse,* 228 U. S. 459), and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, *N. Y. Domestic Relations Law,* c. 14, Consol. Laws § 52; *Kittel* v. *Domeyer,* 175 N. Y. 205; *Guardian Trust Co.* v. *Straus,* 139 App. Div. 884, aff'd 201 N. Y. 546, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

In *Saltonstall* v. *Saltonstall,* 276 U. S. 260, a tax had been imposed by state statute on the succession to a remainder interest which had vested under a trust created before the enactment of the taxing act. It was objected that the tax was void as retroactive and hence in conflict with the Fourteenth Amendment of the federal Constitution under the ruling in *Nichols* v. *Coolidge, supra,* later applied in *Untermyer* v. *Anderson,* 276 U. S. 440. But by the provisions of the trust indenture a power of disposition of the remainder had been reserved to the settlor to be exercised by him at any time during his life, with the concurrence of one trustee, and we held that the freeing of the remainder of the possibility of the exercise of that power, through its termination by the death of the settlor, effected a transfer which was the appropriate subject of a

succession tax and that the tax was not retroactive since the termination of the power which was prerequisite to the complete succession did not occur until after the enactment of the statute. The Court said (p. 271):

"So long as the privilege of succession has not been fully exercised it may be reached by the tax. See *Cahen v. Brewster*, 203 U. S. 543; *Orr v. Gilman*, 183 U. S. 278; *Chanler v. Kelsey, supra; Moffitt v. Kelly, supra; Nickel v. Cole, supra.* And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen v. Wisconsin*, 240 U. S. 625. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another."

That, it is true, was said of a succession tax, and we are here concerned with a transfer tax. The distinction was there important for it was at least doubtful whether upon the death of the settlor there was any such termination, as to him, of a power of control over the remainder such as would have been subject to a tax levied exclusively on transfers, since the power was not vested in him alone, but in him and another. See *Reinecke v. Northern Trust Company*, decided this day, *post*, p. 339. But we think that the rule applied in *Saltonstall v. Saltonstall, supra,* to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the

donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers.

But the plaintiffs say that the tax here must be deemed to be a tax on property because the beneficiaries' interests in the policies were not transferred to them from the decedent, but from the insurer, and hence there was nothing to which a transfer or privilege tax could apply. Obviously, the word " transfer " in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Sec. 402 (c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value or proceeds at the time of death. It is of some significance also that by the local law applicable to the insurer and the insured in this case, a beneficiary's rights in the policy and its proceeds are deemed to be the proceeds of the premiums expended by the insured and as such recoverable in full by one having an equitable claim attaching to the premiums. *Holmes* v. *Gilman,* 138 N. Y. 369.

The plaintiffs point to no requirement, constitutional or statutory, that the termination of the power of disposition of property by death whereby the transfer of property is completed, which we have said is here the subject of the tax, must be preceded by a transfer directly from the decedent to the recipient of his bounty, of the property

subject to the power. And we see no necessity to debate the question whether the policies themselves were so transferred, for we think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chanler* v. *Kelsey*, 205 U. S. 466. "To make a distinction between a general power and a limitation in fee is to grasp at a shadow while the substance escapes." Sugden, Powers, 8th ed., 396; see Gray, Perpetuities, 3d ed. 1915, § 526 (b). And the non-exercise of the power may be as much a disposition of property testamentary in nature as would be its exercise at death, *Bullen* v. *Wisconsin*, 240 U. S. 625; cf. *United States* v. *Robbins*, 269 U. S. 315, 327; *Cohen* v. *Samuels, supra*.

The objection urged by plaintiffs under the second question, that the statutory method of fixing the tax and securing its payment infringes the Fifth Amendment, need not detain us. It is said that both the tax on those who share in the decedent's estate and that paid by the beneficiaries is larger than it otherwise would be if the proceeds of the insurance had not been included in the decedent's gross estate. But the increase in the tax to both is a consequence of including the amount of the policies in the gross estate in determining the net which is made the measure of the graduated transfer tax. The objection amounts to no more than saying that if the transfer of

the policies or their proceeds be taxed, they should not be included with the other property of the estate in determining the rate of the tax. As it is. the termination of the power of disposition of the policies by decedent at death which operates as .an effective transfer and is subjected to the tax, there can be no objection to measuring the tax or fixing its rate by including in the gross estate the value of the policies at the time of death, together with all the other interests of decedent transferred at his death. *Stebbins* v. *Riley,* 268 U. S. 137. The inclusion in the gross estate of gifts made in contemplation of death under § 402 (c) has a like effect.

Other objections to the operation of the statute are not discussed either because they are not of weight or are not presented by the certified facts.

The questions propounded by the Court of Claims in form suggest that the tax is one imposed by the statute upon the policies. This we have shown is not the case. It is the transfer, which is a concomitant of the criteria laid down by the statute for imposing the tax, which is the subject of the tax. The tax is not on the policies, but we answer the question as if inquiring about the true subject of the tax.

*Both questions are answered, No.*

MR. JUSTICE MCREYNOLDS concurs in the result.

MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER dissent.