**HEINER, Internal Revenue Collector, v. GRANDIN.**

**No. 3837.**

Circuit Court of Appeals, Third Circuit.
Sept. 26, 1930.

BUFFINGTON, Circuit Judge, dissenting.

John D. Meyer, U. S. Atty., Wm. J. Aiken, Asst. U. S. Atty., and John A. McCann, Sp. Asst. to U. S. Atty., all of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

Maynard Teall, of. Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

The question in this case is whether or not two insurance policies taken out in his lifetime by the decedent, William J. Grandin, one for $10,000 issued December 31, 1894, and the other for $250,000, issued December 30, 1906, should be included in the gross estate of the insured, who died December 30, 1920, and should be taxed under the provisions of section 402(f) of the Revenue Act of 1918 (40 Stat. 1097) which reads as follows:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the 'extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

There were two other policies taken out by him on his life for $20,000, each issued respectively on July 14, 1919, and July 30, 1919. Harriet C. Grandin, widow of the insured, was the beneficiary named in these policies and she received from all four of them $300,000. Excluding the statutory exemption of $40,000, allowed to her by the statute, the collector included the remainder of $260,-000 in the gross estate and assessed and collected a tax of $5,210.26 in consequence. A claim for refund was filed, but the Commissioner of Internal Revenue did not take any action on the claim for six months, and this suit was then brought for the recovery of the tax.

The taxpayer contends that, since these two policies were issued before the act was passed, one in 1894 and the other in 1906, they are not taxable under the law laid down in the case of Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 488, 69 L. Ed. 934. In that case in the District Court, the trial judge held that a tax on the net proceeds of the policies (the will providing that all inheritance duties and taxes should be paid out of the capital of his residuary estate) was in effect taking property without due process of law and so was unconstitutional. The Supreme Court, after speaking of the serious questions and doubts in discussing the limits of the powers of Congress in such cases, said: "Not only are such doubts avoided by construing the statute as referring only to transactions taking place after it was passed, but the general principle 'that laws are not to be considered as applying to cases which arose before their passage' is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways. Shwab v. Doyle, 258 U. S. 529, 534, 42 S. Ct. 391, 66 L. Ed. 747,

26 A. L. R. 1454. This case and the following ones, Union Trust Co. v. Wardell, 258 U. S. 537, 42 S. Ct. 393, 66 L. Ed. 753, Levy v. Wardell, 258 U. S. 542, 42 S. Ct. 395, 66 L. Ed. 758, and Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760, go far toward deciding the one now before us. They also indicate that the Revenue Act of 1924, c. 234, § 302(h); 43 Stat. 253, 305 [26 USCA § 1094, note], making (g) (the equivalent of (f) above) apply to past transactions, does not help but if anything hinders the Collector's construction of the present law. Smietanka v. First Trust & Savings Bank, 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391."

This decision indicates that in insurance policies, at least, under sections 401 and 402 of the Revenue Act of 1918 (40 Stat. 1096, 1097), the test of taxability depends upon whether the policy was issued before or after the act was passed. "The statute referring only to transactions taking place after it was passed" does not impose a tax on the proceeds of policies issued before it was passed.

Not only does this seem to be the test from the language used by the Supreme Court in the Frick Case, but the facts of that case make this perfectly clear. There were eleven policies on Mr. Frick's life aggregating $474,629.52. At the time of his death four of these policies were payable to Mrs. Frick and seven to his daughter. The first was taken out in 1874 and the last in 1901. Some of them were originally made payable to Mr. Frick's estate, with no provision for change of beneficiary, but were subsequently assigned to Mrs. Frick and Miss Frick without reservation of power to revoke the assignment. These doubtless vested absolutely in Mrs. Frick and Miss Frick. Others were assigned to Miss Frick with power reserved to revoke the assignment. It is evident, therefore, that in those in which the power to change the assignment was reserved, Mr Frick retained the power to control the beneficiary. The transfer in these did not actually take place until the death of Mr. Frick, for an outstanding power residing exclusively in the insured or donor to recall a gift after it is made or to change the beneficiary in an insurance policy is a limitation on the gift or the interest which the beneficiary has in the policy which makes the transfer incomplete as to the donor as well as to the donee. So long as the power to change the beneficiary in an insurance policy remains in the insured, the possibility of its exercise remains and the transfer is incomplete. In other words, the transfer in such case is not completed and

does not take place until the reserved power is exercised or terminated by the death of the insured when all the rights of the designated beneficiaries pass to them freed from the possibility of the exercise of that power. It is upon this transfer, at death or other termination of the power, that the act operates. Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830; Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank v. United States, 278 U. S. 327, 334, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388.

In the case of Reinecke v. Trust Co., 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, 66 A. L. R. 397, seven trusts were created. Two of them, called the "two trusts," as distinguished from the other five designated as the "five trusts," were created in 1903 and 1910 respectively, long before the Revenue Act of 1921 (42 Stat. 227) was passed. The "five trusts" were created in 1919, two years before that act was passed. In the "two trusts," the settlor reserved in himself alone the power of revocation of the trusts. In the "five trusts," the power was reserved "to alter, change or modify the trusts," but it was to be exercised by himself and others whose interests were adverse to his. These "five trusts," because of the adverse interests, the court held, "for all practical purposes, had passed as completely from any control by the decedent which might inure to his own benefit as if the gift had been absolute."

The settlor died without having revoked the "two trusts" or without having modified any of the "five trusts," except one in an immaterial manner. All of them were created before the Revenue Act of 1921 (42 Stat. 227), under which the tax was imposed, was passed, and all of them were alike so far as taxability is concerned, except the "two trusts" reserved in the settlor alone the power to revoke, and the "five trusts" reserved that power in him and others. The Supreme Court held that the transfer in the "five trusts" was complete when they were created and took effect then, and so they were not taxable. But the transfer in the "two trusts" was not complete until the settlor died on May 30, 1922, and so they constituted part of his gross estate and were properly taxed. The test of taxability of these trusts was made to depend, not upon whether or not the trusts were created before or after the passage of the act, but upon whether or not the settlor had so retained control of them as to make them part of his gross estate at the time of his death and this he had done in the "two

trusts" by reserving in himself alone power to revoke them.

The decision in this case is controlling in the case at bar unless the law as applied to insurance policies differs from that as applied to trusts. Both of them, trusts and insurance policies, are taxed under the same section of the statute, but under different subsections. In no case has the Supreme Court said or even intimated, so far as we have been able to discover, that a different principle applies in the taxation of trusts from that applied to the taxation of insurance policies, under section 402 of the act in question.

It is true that the only practical difference between the facts of the Reinecke Case and the Frick Case is that in the Frick Case, insurance policies, and in the Reinecke Case, trusts, were involved. In the Frick Case, there were eleven insurance policies in existence at the time of his death. In eight of those, Mr. Frick had no power to change the beneficiary or assignment, but, in three of them, he had that power and thus maintained his power of control over those until his death. In the Reinecke Case, there were seven trusts. In five of them, the decedent had no power "to alter, change or modify" when he died, but in two of them he had power to do so, and, because he had reserved such power, the Supreme Court held that these two were part of his gross estate and were taxable under the act, but that the five, in which such power was not reserved, were not part of his gross estate and were not taxable. However, in the Frick Case, the fact that power had been reserved to revoke the assignment in three policies seems not to have been brought to the attention of the Supreme Court, and the case was disposed of without reference to this question, but in the cases of the Chase National Bank and Reinecke, supra, the effect of the reservation of power was directly in issue and the cases turned on this point.

The case at bar, therefore, is controlled by those cases. In the two policies in question, although issued before the act was passed, the insured reserved the right to change the beneficiary, and so the transfers did not take place until Mr. Grandin's death. Accordingly they constituted a part of his gross estate and were taxable.

The judgment, 27 F.(2d) 454, of the District Court is reversed and a new trial granted.

BUFFINGTON, Circuit Judge (dissenting).

I am constrained to dissent in this case for reasons I now state.

On the day of his death, December 30, 1920, four policies on the life of William James Grandin were in force. Two of them, viz., A–7373 for $20,000, and MDB 178 for $20,000, were issued on July 30, 1919. With these two policies we are not concerned, for, while issued subsequent to the Act of February 24, 1919 (40 Stat. 1057), they were by its terms exempt from taxation. But we are concerned with the other two policies, viz., No. 81265 for $10,000, issued December 31, 1894, and No. 1514880 for $250,000, issued December 30, 1906. The $10,000 policy was on April 22, 1909, made payable to Harriet C. Grandin, the decedent's wife, and she was made the beneficiary of the $250,000 policy on February 24, 1908, and so remained at the date of the death of the decedent. Against the protest of the estate of the decedent a transfer tax was assessed on these two policies and paid. An action was then brought to recover the same in the court below. That court held that, "under the ruling of Judge Thomson of this District in the case of Frick v. Lewellyn, 298 F. 803, we hold that these policies of insurance were not properly included within the estate of the decedent, subject to estate tax." The decision of Judge Thomson was affirmed in Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, on the ground that the act was inapplicable, because the policies antedated the passage of the taxing act. In the instant case it may be noted that two of the policies in question, aggregating $260,000 in amount, likewise antedate the act and therefore fall within the Supreme Court ruling.

It is, however, contended that the holding of the Supreme Court in 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, that the Act of February 24, 1919 (40 Stat. 1057), did not apply to insurance policies taken out before that date, has been reversed by the reasoning of that court in Chase National Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, and Reinecke v. Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397. I cannot agree with this contention. In the Chase National Bank Case, the policies were taken out after the passage of the Act of February 24, 1919, and consequently the question decided in the Frick Case, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, was not involved. The Reinecke Case did not involve insurance policies nor the statute passed on in the Frick Case.

In the absence of any statement by the Supreme Court itself that its holding in the Frick Case is no longer law, I feel I am justified in following its holding in that case,

144

and, as it did, "construing the statute as referring only to transactions taking place after it was passed." Moreover, I cannot but feel that, since the decision in Lewellyn v. Frick was made, many persons have based their acts on such holding by that court, and that, if it is no longer the law of the land, that court will dispel the uncertainty now confronting insurers, and itself settle this vital question authoritatively.