## LEVY'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 340.

Circuit Court of Appeals, Second Circuit.
May 8, 1933.

Saul I. Radin, of New York City (Otto C. Sommerich, of New York City, of counsel), for appellant.

Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lewis S. Pendleton, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This petition seeks a review, pursuant to sections 1001–1003 of the Revenue Act of

1926 (44 Stat. 9, 109, 110 [26 USCA §§ 1224 and note, 1225, 1226]), of the imposition of a federal estate tax under the Revenue Act of 1924 (43 Stat. 253).

Joseph M. Levy died May 30, 1925, a resident of New York. By deed, dated June 5, 1914, there was conveyed to him and his wife, "their heirs and assigns forever," real property in New York. At his death, the property was still owned by both as tenants by the entirety. At his death there were outstanding 110 policies of life insurance aggregating $279,502.58, 93 of which were payable to his wife as beneficiary and 17 to his sister. All of the policies originally gave him the right to change the beneficiary. The proceeds of 10 policies were paid directly to the beneficiary in a lump sum. In 66 policies the right to change the beneficiary was never waived, and, of this group, 23 were taken out prior to the first federal estate tax of 1916; 28 were taken out while the 1916 act was in force; 15 were taken out after the effective date of the 1918 Revenue Act (40 Stat. 1057).

In 44 of the policies, some of which were ordinary life and others 20-payment life, the right to change the beneficiary was waived by the insured and revoked by the company on May 1, 1916. The oldest policy was issued March 27, 1909, and the others on various dates from March 27, 1912, to March 27, 1915. Mrs. Levy was the beneficiary in each of the 44 policies. All contained provisions as to nonforfeiture, loan, and optional settlements. Under the nonforfeiture and loan provisions, a cash surrender value was payable "upon request, accompanied by full and valid surrender of this policy and all claims thereunder," and the loan was obtainable "upon request and the sole security of this policy properly assigned." Under each of the policies the insured had the right to designate contingent beneficiaries whose interests should be as expressed by indorsement of the company on the policy, and the right to change any contingent beneficiary not irrevocably named. The insured had the right to elect an optional mode of settlement in lieu of payment in one sum and the beneficiary, when the policy became payable, had the right of election if the insured had made no election.

On May 1, 1916, the insured waived, with the company's consent, his right to change the beneficiary as to each of these 44 policies, making his wife sole beneficiary. While the insured waived his right to change the beneficiary, he elected that the settlement of the policy be made with the beneficiary in accordance with option A of the policy, which pro-vided that the insurance company was to retain the proceeds until the death of the last-surviving beneficiary or contingent beneficiary, the company in the meantime to pay an annuity. The insured reserved to himself the right to revoke or change the mode of settlement, and withheld such right from the beneficiary. Such indorsement was made on the policy. On request of the insured, his children were designated his contingent beneficiaries and indorsement made accordingly on the policies stating that "The right to change or revoke the above designation is hereby reserved to the insured." At the same time, an indorsement was made revoking that of May 1, 1916, with respect to the mode of settlement and providing:

"That settlement of the full proceeds of this policy shall be made with Sally S. Levy, wife and beneficiary, in accordance with the provisions of Option A and in event of her death settlement shall be made in the same manner with * * * children, herein designated as contingent beneficiaries. * * * The foregoing settlement shall be made without privilege of revocation or surrender except as herein expressly stipulated."

As to some of the policies of this group, with the approval of the company by indorsement on the policies, the insured on September 10, 1921, canceled and revoked the appointment of the contingent beneficiaries and the option settlement applying to such policies, and requested that the proceeds be payable in one lump sum. Thereafter the insured requested the company to restore the contingent beneficiaries' interest and optional settlement upon these policies as they existed prior to the indorsement of September 10, 1921. This was done by indorsement stating: "The above is subject to and without prejudice to the assignment of the policy to this company for a loan." Loans were made in several amounts.

The executors filed an estate tax return claiming no liability. The Commissioner based a deficiency on the inclusion in the gross estate of the value of the property held at the time by the decedent and his wife as tenants by the entirety and the proceeds of the insurance policy payable to his wife and sister in excess of $40,000. Appellant argues that Congress could not provide, constitutionally, that there should be included in decedent's gross estate for tax purposes, the value of the real estate held by him and his wife as tenants by the entirety regardless of when the tenancy was created. The argument is based upon the claim that no in-

414

creased interest accrued to his wife upon the death of the decedent.

Section 302 of the Revenue Act of 1924 (26 USCA § 1094 note), in effect at the time of decedent's death, provides that "the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * * (e) to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth. * * * * "

By section 302 (h) this provision, section 302 (e), is made applicable to all rights whether they are created before or after the enactment of the act. It is not argued that the statute does not require the inclusion in the gross estate of the value of the tenancy by the entirety of the decedent and his wife created in 1914, but it is said that it is unconstitutional to include in that gross estate the value of property held under a joint tenancy created prior to the passage of the Revenue Act of 1916 (39 Stat. 756), the first statute to contain a provision to this effect.

■ In Phillips v. Dime Trust & Safe Deposit Co., 284 U. S. 160, 52 S. Ct. 46, 76 L. Ed. 220, the court held that the value of property on a tenancy by the entirety created subsequent to the passage of the 1916 act but prior to the Revenue Act of 1924, was required to be included and taxed under the 1924 act. Recently the Supreme Court in Third National Bank & Trust Co. of Springfield v. White, 287 U. S. 577, 53 S. Ct. 290, 77 L. Ed. —— (December 19, 1932), which arose under section 302 (e) and (h) of the Revenue Act of 1924 (26 USCA § 1094 note), held that there should be included in the gross estate the entire value of the property held by the decedent and spouse as tenants by the entirety notwithstanding the fact that the tenancy was created prior to September 8, 1916, the effective date of the 1916 act. In Gwinn v. Comm., 287 U. S. 224, 53 S. Ct. 157, 77 L. Ed. 270, it was held that there should be included in the value of decedent's estate one-half the value of the property which she and her son held as joint tenants, required by

section 302 (e) of the Act of 1924, notwithstanding the fact that the tenancy was created in 1915. In both cases, the court held that death became the generating source of definite accessions to the survivors' property rights and thus furnished the occasion for the tax, and hence the statute was not being applied retroactively in the case of a decedent dying after the passage of the applicable act. The same reason was applied in Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. By these cases we think it is authoritatively established that the death of a tenant by the entirety results in the enjoyment of property rights in the survivor and furnishes the occasion for the imposition of the tax, if that event takes place after the passage of the taxing statute regardless of when the tenancy was created. See, also, Lang v. Com'r of Internal Revenue, 53 S. Ct. 534, 77 L. Ed. ——, decided April 10, 1933.

■ The inclusion in the gross estate of the proceeds of life insurance policies payable to beneficiaries other than the executors, where the decedent had reserved the right to change the beneficiary named in the policies, was upheld in Chase Nat. Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388. While in the Chase Case the policies were taken out after the passage of the Revenue Act of 1921, 42 Stat. 227, the statute under which the tax was imposed, the reasoning of the court was that the insured retained until his death the right to change the beneficiary, surrender, or borrow money on the policies, and other rights, so that the shifting of the economic benefits at his death furnished the occasion for the tax. It is immaterial when the policies were taken out so long as there was at decedent's death a freeing of the rights of the beneficiary from the possibility of the exercise of his retained rights by the insured. Heiner v. Grandin (C. C. A.) 44 F.(2d) 141, affirmed 56 F.(2d) 1082 (C. C. A. 2), certiorari denied, 286 U. S. 561, 52 S. Ct. 643, 76 L. Ed. 1294. This rule applies at least to the 66 policies to which reference was made. Policies taken out prior to the passage of any Revenue Act should be included for the additional reason that section 302 (h) of the Revenue Act of 1924 (26 USCA § 1094 note) makes section 302 (g) apply retroactively (Sampson v. United States [D. C.] 1 F. Supp. 95), whereas the Revenue Act of 1918, considered in Heiner v. Grandin, supra, contained no similar provision. Section 302 (g) alone requires the inclusion of the proceeds of the 66 policies where the decedent reserved the right to change the benefi-

ciary. The statute is not unconstitutional, for the tax is imposed upon the shifting of economic benefits that occur at death. Chase Nat. Bank v. United States, supra.

■ As to the 44 policies, the Board found that the decedent had retained until his death the right to change contingent beneficiaries and to alter the mode of settlement. These policies were taken out by a New York resident, through a New York agency of the company, a Wisconsin corporation, with its home office, at Milwaukee, Wis. The company's New York form of policy was used. They are New York contracts. Northwestern Mut. Life Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; United States Mortgage & Trust Co. v. Ruggles, 258 N. Y. 32, 179 N. E. 250, 79 A. L. R. 802. There is a written notation on the policies indicating that loans were secured on some of the policies. The record does not disclose whether the principal beneficiary joined in the application for the loans. The provision in the policy for a loan stated, in accordance with the standard clause required by section 101 of the New York Insurance Law (Consol. Laws N. Y. c. 28) that the loan would be made "Upon request and the sole security of the policy properly assigned. * * *" The provision for cash surrender value stated that "Upon request accompanied by a full and valid surrender of this policy and all claims thereunder the Company will pay the then cash surrender value. * * *"

■■ Under section 52 of the Domestic Relations Law of New York (Consol. Laws N. Y. c. 14), policies taken out by the wife or the husband, acting for the wife, on the husband's life, cannot be surrendered without the wife's consent. Whitehead v. New York Life Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787. The courts of New York follow the general rule that a beneficiary, irrevocably designated, obtains rights in a policy which require her consent to a valid surrender of the policy by the insured. See Central Nat. Bank of Washington v. Hume, 128 U. S. 195, 206, 9 S. Ct. 41, 32 L. Ed. 370; In re Simmons & Griffin, 255 F. 521 (C. C. A. 1); Schneider v. United States Life Ins. Co., 123 N. Y. 109, 25 N. E. 321, 20 Am. St. Rep. 727; Whitehead v. New York Life Ins. Co., supra. A different result may be reached if the insured has the right to change the beneficiary or originally reserves the right to surrender the policy. Wagner v. Thieriot, 203 App. Div. 757, 197 N. Y. S. 560; Travelers' Ins. Co. v. Healey, 25 App. Div. 53, 49 N. Y. S. 29. The rule which forbids the surrender

for cash, in violation of the beneficiary's interest, equally forbids the insured from obtaining a loan without consent of the beneficiary. Therefore, to the extent of the 3 per cent. annuity, the insured had no rights after he had irrevocably designated his beneficiary. The value of the annuity cannot be taxed. The fact that the insured continued to pay premiums after the applicable Revenue Acts were passed, does not affect the result. To the extent of this annuity only the order should be modified, for it may not be taxed.

The order is reversed, and the cause remanded for proceedings in accordance with this opinion.