## FIRST TRUST & DEPOSIT CO. et al. v. SHAUGHNESSY, Collector.

### No. 157.

Circuit Court of Appeals, Second Circuit.

April 8, 1943.

Stewart F. Hancock, of Syracuse, N. Y. (Hancock, Dorr, Ryan & Shove and Benjamin E. Shove, all of Syracuse, N. Y., of counsel), for appellants.

Edward First, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and Ralph L. Emmons, U. S. Atty., and B. Fitch Tompkins, Asst. U. S. Atty., both of Syracuse, N. Y., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment dismissing a complaint, entered upon a verdict directed by the judge at the conclusion of the trial. The plaintiffs were the executors of one, Ballard, and the action was against a collector of internal revenue to recover estate taxes erroneously collected. The question was whether Ballard had transferred nine insurance policies on his own life to his wife "in contemplation of death" within the meaning of § 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 228. In all the policies the decedent's wife was the

beneficiary, although he had reserved power to change the beneficiary. On January 16, 1929, he transferred all the policies to a corporate trustee, which was to receive any dividends declared upon them and apply them in payment of premiums; Ballard engaging to make up any deficiency. Upon his death the trustee was to collect the proceeds, hold them in trust for the benefit of his wife during her life, and upon her death to pay the principal to his three daughters. Although Ballard retained no power to revoke the trust, he did reserve power to change the beneficiary to anyone except himself. We assume that such a change would not dissolve the trust, but merely substitute the new beneficiary in the policies in place of his wife as cestui que trust.

Some years later Ballard became concerned as to whether the reservation of the power to change the beneficiary might not subject the policies to an estate tax, and in December, 1934, he consulted his lawyer, who advised him that there was a chance that this might be so, owing to a change in the law made after the trust was executed. For this reason on March 26 and 27, 1935, he put an end to the trust, and, having thus resumed ownership of all the policies, transferred them to his wife. She, at once and as part of a single plan, in her turn transferred the policies to a corporate trustee—the successor of the first—to receive any moneys becoming due under them and upon Ballard's death to collect the proceeds, invest them and pay the income to herself (and in its discretion the principal as well); and upon her death to distribute the principal among the three daughters. If she died before Ballard, the trust was to end and the policies revert to him absolutely. She agreed to pay all premiums, and reserved the power to revoke the trust, to change the beneficiaries under it, and to withdraw any policy and exercise any privilege which was reserved in it in favor of its "owner."

At the time of the gift Ballard was a man of 64, in active business in the City of Syracuse as a building contractor. Doctors had pronounced him in good health and he had apparently the same life expectancy—over eleven years—as any other man of his age. However, he died unexpectedly about eight months later—in November 1935—and the amount of the policies was included in his estate upon the theory that he had made the gift in contemplation of death. His executors, having paid a tax upon his estate so increased, brought this action to recover it. Their position is that since Ballard had no more reason to expect an early death than any other man of his years, it is not enough under the statute that he undoubtedly made the gift in contemplation of his death in the sense that all men know they must die and to some degree prepare for it; and they insist that in any event there was a question of fact for the jury what his intent really was. The judge directed a verdict against them on the theory that they had not overcome the statutory presumption arising from Ballard's death within two years.

Although we agree in the result for reasons we shall give, we cannot agree that the presumption should have had any place in the decision. This presumption, like any other, merely calls upon the opposite party to produce proof in denial of the issue. Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229; New York Life Insurance Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218; Commercial Molasses Corp. v. New York Barge Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 86 L.Ed. 89. If the Treasury had sued the executors for the tax, it could safely have rested its case after proving that Ballard had died within two years, and the executors would then have been obliged to bring forward some evidence that he had not made the gift in contemplation of death. Here however the positions are reversed, for the executors, who have paid the tax, allege that it is unjust for the collector to keep it because it was not due. To make good that claim they must not only bring forward some evidence that Ballard did not make the gift in contemplation of death, but they must carry the burden of proof on that issue: a duty which comprises more than the duty imposed by the presumption. The only question therefore was whether reasonable persons might have concluded from all the evidence that Ballard had not made the gift "in contemplation of death"; although it is true that upon that issue the plaintiffs are entitled to every intendment in their favor.

We shall assume—though it is not at all clear that the assumption is justified—that his wife lawfully might have refused to put the policies in trust as soon as Ballard had given them to her. Nevertheless,

it cannot be doubted that he expected her not to do so, and no jury should have been permitted to find that he did not; he intended that she should set up the kind of trust which she did; and it is that intent which determined the gift for the purposes of the statute. Had his wife not reserved the powers which she did to break the trust, there could not have been the least question that her intent in creating it—and therefore Ballard's intent—would have brought the gift within the statute, for it would have been in every particular a substitute for a testamentary disposition. This would have been equally true, if Ballard had lived for fifteen years; it would have been equally true, if he had not intended to avoid the estate tax. He would have given her property which he intended to be unavailable for any beneficial purpose until after his death and to become the equivalent of a bequest thereafter. She did not, however, set up that kind of trust, because she reserved even greater powers over it than he had reserved over the trust of 1929; and, as we have just seen, the provisions of her trust are to be imputed to him as a part of his intent when he made the gift. Those powers enabled her to make use of the property while he lived; and a jury would have been entitled to find that he expected that she might use them, either for her own benefit, or perhaps to assist him if his affairs needed assistance. Here was a purpose which might be realized before his death.

For this reason we think that the case comes within the doctrine of United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867: a gift dictated by two motives—one, a desire to dispose of property after the donor's death—the other, to dispose of it before. That case laid it down that in such situations the inclusion of the property within the donor's testamentary estate depends upon which of the two motives preponderates. Normally, that is a question for the jury, and it would be an error to direct a verdict. Under all the circumstances we do not think that it was in the case at bar. The only testimony is that Ballard's single purpose in changing from the 1929 trust to that of 1935 was to save his wife from the estate tax which, as his attorney told him, might be imposed as matters then stood. There is not a syllable of evidence to show that the enlarged powers reserved to the settlor in the 1935 trust were put there because she was ex-

pected to exercise them so as to make use of the policies during her life. That he expected that she *might* do so, does not help to show that he regarded that power as of greater importance than his testamentary dispositions. Until the plaintiffs showed some reason for supposing that he was actuated more by the first, than by the second, purpose, they made no step towards a verdict, and they had the burden of proof. Indeed, not only is it reasonably plain a priori that the relative weight of the two purposes was the reverse of what they needed, but the very fact that the shift from the first to the second trust was impelled only by a desire to escape estate taxes which could not fall due before he died, was nearly, if not quite, conclusive proof that the powers reserved were not deemed as important as the post mortem disposition. The condition of Ballard's health and his state of mind towards his death had nothing whatever to do with the case. There was no question of fact for the jury to decide and it was right to direct a verdict.

Judgment affirmed.