**LIEBMANN v. HASSETT, Collector of Internal Revenue.**

**No. 1460.**

District Court, D. Massachusetts.

June 22, 1943.

Lee M. Friedman, Paul D. Turner, and Friedman, Atherton, King & Turner, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, and Edward First, Sp. Assts. to the Atty. Gen., for defendant.

538

FORD, District Judge.

The denial of a claim for refund of estate taxes alleged to have been illegally assessed upon and collected from the plaintiff as executrix of the estate of Harry Liebmann, late of Boston, brings this case here.

The facts are as follows:

The plaintiff on October 28, 1937, was duly appointed executrix of the estate of Harry Liebmann who died on October 3, 1937. The estate tax returned by the plaintiff did not include the proceeds of five policies of insurance on the life of the decedent amounting to $81,081.71. The policies are as follows:

### Policies A and B.

These are policies issued by the New England Mutual Life Insurance Company on January 26, 1925, and January 28, 1925, valued respectively at the decedent's death at $5,069.91 and $5,069.88. These policies when originally taken out in 1925 were payable upon the decedent's death to his wife, Hennie F. Liebmann, or her executors, without right of revocation. In 1932, pursuant to a request executed by his wife, the proceeds were made payable to herself, if she survived him, otherwise to her daughter, if the latter survived the decedent, and otherwise to the decedent's estate. The decedent paid all the premiums on these policies up to the time of his death.

### Policy C.

Policy C was issued by the Provident Life and Trust Company of Philadelphia on the decedent's life in 1914 and was valued at his death at $5,476.38. It was made payable to his wife, if living, and otherwise to his own estate, without right reserved to the insured to change the beneficiary. All premiums on this policy were paid by the decedent up to the time of his death.

### Policy D.

This policy was issued in 1898 by the Equitable Life Assurance Society of the United States on the decedent's life in the amount of $10,000 and was made payable to his estate subject to the right to change the beneficiary. This policy became paid-up in 1918 at which time the existing surplus of the policy was converted into additional insurance in the amount of $2,930. In 1914, the insured directed that upon his death the proceeds of this policy were to be paid to his wife, if living (without the right of revoking this designation), otherwise to his own estate. The value of this policy at the insured's death was $15,465.54.

### Policy E.

This policy was dated May 12, 1916, and issued by the Northwestern Mutual Life Insurance Company in the sum of $50,000. It was made payable to the decedent's wife with power reserved to change the beneficiary. On December 24, 1935, the decedent assigned this policy to his wife "in consideration of love and affection". The assignment was attached to the policy on or about December 30, 1935, and was then delivered to his wife who held possession of it until the decedent's death. The wife paid the two subsequent premiums due on the policy prior to the decedent's death. The decedent died on October 3, 1937, within two years after the assignment and delivery of the policy to his wife. The decedent filed a gift tax return for 1935 which reported the value of this policy at the time of the assignment to be $23,985.91 (proper adjusted value $24,549.60).

The government contends: (1) that the proceeds of policies A, B, C, and D, payable to specific beneficiaries if they survived the insured, but otherwise payable to the insured's estate, were properly included in insured's gross estate under Section 302(g) of the Revenue Act of 1926;[1] (2) that the transfer of the policy E which took place within two years of the insured's death was a transfer in contemplation of death or intended to take effect in possession or enjoyment at or after his death and, consequently, includible in his gross estate

[1] "Sec. 302. [as amended by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680]

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

*     *     *     *     *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." 26 U.S.C.A. Int.Rev.Acts, pages 227, 231.

under Section 302(c) of the Revenue Act of 1926, as amended.[2]

Inasmuch as different principles of law are applicable with respect to the policies, the latter, in the discussion that follows, will be grouped as follows: I—Policies A and B; II—Policies C and D; and III—Policy E.

## Group I.

■ The proceeds of policies A and B, taken out by the decedent in 1925 and made payable upon his death to his wife or her executors without the right of revocation, could not in this form be properly included in the decedent's gross estate under Section 302(g) of the Revenue Act of 1926. Cf. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Paul on Life Insurance & The Federal Estate Tax, 52 Harvard Law Review 1037, 1052. However, as noted above, a change was made in 1932 which made the proceeds of these policies payable to the decedent's estate if he survived both his wife and daughter. Thus a possibility of reverter was created in the decedent which was terminated by his death, and since the decision in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, the determination of the decedent's reverter interest was an event that made the proceeds of the policies includible in his gross estate. Chase National Bank of City of New York v. United States, 2 Cir., 116 F.2d 625; Bailey et al. v. United States, 31 F.Supp. 778, 90 Ct.Cl. 644; Cf. Broderick v. Keefe, 1 Cir., 112 F.2d 293; and Commissioner of Internal Revenue v. Washer, 6 Cir., 127 F.2d 446.

■ The plaintiff asserts that the change made in these policies in 1932 is of no legal effect on the ground that it was the act of the beneficiary and that under the terms of the policies the beneficiary had no such power. However, an examination of the policies merely discloses that the change was made and endorsed on the policies. It is true that the beneficiary *requested* that the terms of the policies be altered, but there is no evidence that the actual change was executed without the insured properly assenting thereto. The Supreme Court of the United States has said that "it is a rule of very general application that, where an act is done which can be done legally only after the performance of some prior act [here the acquiescence of the insured] proof of the latter carries with it a presumption of the due performance of the prior act." Knox County v. Ninth National Bank, 147 U.S. 91, 97, 13 S.Ct. 267, 270, 37 L.Ed. 93; American Railway Express Co. v. Lindenburg, 260 U.S. 584, 589, 43 S.Ct. 206, 67 L.Ed. 414. Therefore in the absence of facts showing otherwise, the change must stand as having been lawfully executed.

## Group II.

Policies C and D contain substantially the same terms as policies A and B. That is, under policies C and D there is in the decedent a possibility of reverter which was determined at his death. It would seem, therefore, that the conclusion reached as to policies A and B should apply to policies C and D. But whether the proceeds of policies C and D are properly includible in decedent's gross estate involves a consideration not present in our discussion of the policies in group I.

Policies C and D were issued before the effective date of the Revenue Act of 1918, 40 Stat. 1057, which was the first act expressly to include in a decedent's gross estate the proceeds of life insurance policies payable to specific beneficiaries. In Lewellyn v. Frick, 1925, 268 U.S. 238, 45 S.Ct. 487, 488, 69 L.Ed. 934, the Supreme Court held that certain policies taken out before the passage of the Revenue Act of 1918 were not to be included in the gross estate of the decedent for estate tax purposes, saying that "[the] laws are not to be considered as applying to cases which arose before their passage." There were eleven policies involved in the Frick case, all antedating the passage of the 1918 Act. One was payable to the decedent's estate and

---

[2] "(c) [as amended by the Act of March 3, 1931, c. 454, 46 Stat. 1516, and by Section 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169]. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death. * * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. * * *" 26 U.S.C.A. Int.Rev.Acts, page 228.

was subsequently assigned to his wife provided she survived him; another was payable to the decedent's wife but created in the decedent a possibility of reverter if he survived her.

However, the lower courts refused to follow the Frick case on its facts, and the decision was limited so as to cover policies wherein there was no retention by the decedent of any incidents of ownership. Therefore, if the decedent retained an incident of ownership, and, consequently, there was a shift of benefits at his death, the proceeds of the policies were included in decedent's gross estate even though the policies were issued prior to the effective date of the Revenue Act of 1918. Newman v. Commissioner of Internal Revenue, 5 Cir., 76 F.2d 449; Cook v. Commissioner of Internal Revenue, 3 Cir., 66 F.2d 995; Levy's Estate v. Commissioner of Internal Revenue, 2 Cir., 65 F.2d 412; Heiner v. Grandin, 3 Cir., 44 F.2d 141. The decisions in these cases were based upon Chase National Bank v. United States, supra (involving policies issued subsequent to the passage of the Act of 1918), and Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397 (which involved trusts).

The problem became still further muddled when in Bingham et al. v. United States, 7 F.Supp. 907, the District Court of Massachusetts refused to follow the cases limiting the Frick case. In the Bingham case there was one policy payable to the decedent's wife or to his children if the wife predeceased the latter, and to the decedent's legal representatives if there were no children at his death. There were also four policies payable to the decedent's estate which were subsequently assigned to his wife provided she survived him. These policies, and certain others, were all issued prior to the passage of the Act of 1918. The court held that the policies were not taxable as part of the decedent's gross estate, citing the Frick case as controlling and approving the dissent in Heiner v. Grandin, supra. The Court of Appeals for this Circuit reversed the District Court, 76 F.2d 573, citing the cases which limited the Frick case and maintaining that incidents of ownership were retained by the decedent. The Supreme Court reversed the Circuit Court of Appeals, 296 U.S. 211, 56 S.Ct. 180, 181, 80 L.Ed. 160, Justice Sutherland delivering the opinion of the court.

It seems to me that Mr. Justice Sutherland's opinion is clear and unequivocal in reaffirming the doctrine as set forth in the Frick case. He said, "In Lewellyn v. Frick the policies and assignments, in their entirety, were definitely before the court; and this necessarily included each of the provisions which they contained. * * * We think the points now urged by the government [that the scope of the Frick decision was not broad enough to include policies where there was a retention of incidents of ownership] were decided in the Frick case, and find no reason to reconsider them." However, as a second ground, Justice Sutherland stated that Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, controlled because "No interest passed to the beneficiary as the result of the death of the insured." In other words, the possibility of reverter in the decedent was not an incident of ownership the transfer of which, at decedent's death, could be taxed. Industrial Trust Co. et al. v. United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191, argued the same day and involving an insurance policy containing a similar provision which was issued prior to the Act of 1918, was dealt with in the same manner.

It appears that these were alternate grounds, and that the particular case could have been decided on either. It is safe to say Justices Brandeis, Cardozo, and Stone would have dissented if only the second ground were under consideration. See Helvering v. Hallock, supra, and dissents in Helvering v. St. Louis Union Trust Co., supra, and Becker v. St. Louis Union Trust Co., supra; Chase National Bank v. United States, supra. The inclusion of the second ground in the Bingham case was not essential to the final result reached. It appears to be a "good measure" ground. The court seems to be saying that even if the policies had been issued subsequent to the passage of the Revenue Act of 1918 they would not be taxable because the decedent held no incident of ownership which was transferred upon his death. Chase National Bank v. United States, supra. And it may be that a majority of the court was merely correcting the Circuit Court of Appeals which thought that the possibility of reverter was an incident of ownership.

In any event, prior to the Hallock case, either ground stated in the Bingham

case was decisive of the case. However, the decision in the Hallock case makes it clear that the second ground is no longer law. But it must be kept in mind that the Hallock case in no way affected the first ground in the Bingham case. Under the doctrine of Lewellyn v. Frick, supra, as reaffirmed by Bingham v. United States, supra, the proceeds of policies C and D in the present case are not includible in the decedent's gross estate, the reason being that the policies were issued prior to the passage of the Revenue Act of 1918. See Paul on Life Insurance & The Federal Estate Tax, 52 Harvard Law Review, p. 1037.

## Group III.

At the time the decedent assigned and delivered policy E to Mrs. Liebmann, he was 67 years of age. He was a high-strung, nervous person and as early as 1933 and 1934 had suffered at different times from fainting spells and on these occasions his speech became blurred. For several years at least prior to the time he was first stricken by an acute attack (November 3, 1936) the decedent was medically minded and visited his physician frequently for a check-up complaining of various symptoms for which his family physician and others could find no ascertainable cause. In the year 1935 he saw his physician at least a dozen times for a complete physical examination but on none of these occasions did his physician discover any evidence of physical abnormality. On December 14, 1935, he complained that he stumbled when he walked, particularly on going down stairs and in descending stairs he walked with a limp. However, it was plain from the history of the case that the decedent knew he was slipping for some time prior to the date of the gift of the policy to his wife and was very apprehensive about his physical condition. From the time of his first acute attack in March of 1936 up to the time he had his final stroke and passed away in October, 1937, he was not a well man.

Mrs. Liebmann testified that just before the policy was delivered her husband stated in substance that he wanted to turn some money over to her—to protect her, as she put it, in looking out for herself and her daughter who had become separated from her husband. It appeared that Mrs. Liebmann did contribute to the support of her daughter and the latter's son. The evidence showed that in December, 1935, the time of the gift of the policy, she was worth at least $150,000 in her own right— and "possibly a little bit more"—and the possibility that she needed any money over and above what she already had to take care of family obligations was very remote.

Whatever the effect of Section 302(c) of the Revenue Act of 1926, supra, in creating a presumption that a transfer made within two years prior to the decedent's death shall be deemed to have been made in contemplation of death (whether the presumption stands until proven to the contrary, Myers v. Magruder, D.C., 15 F. Supp. 488, 496, Mather v. MacLaughlin, D. C., 57 F.2d 223, or disappears when any evidence is introduced in denial, First Trust & Deposit Co. et al. v. Shaughnessy, 2 Cir., April 8, 1943, 134 F.2d 940), the plaintiff has not sustained her burden of proving that the transfer was not made in contemplation of death. First Trust & Deposit Co. et al. v. Shaughnessy, supra. To be sure, the decedent made it possible for his wife to surrender the policy and use the proceeds during his life but the decedent, who knew his wife was possessed of a large estate in her own right, hardly expected that she would use the proceeds of the policy to support her daughter and the latter's son. That was a possible but very remote motive for making the gift. As opposed to this, was the fact that the decedent was very apprehensive with respect to his physical condition. The frequent examinations indicated this. His stumbling and limping walk must have indicated to him that at any time he might suffer a stroke that could be fatal. Apprehensions of a sudden passing were plainly in his mind at the time he delivered the policy to his wife. It would appear in the light of the facts that the inducing or dominant motive or cause for the transfer was his contemplation of death rather than a desire "to protect" his wife who hardly needed any protection in her financial condition.

Another consideration: It was hardly contemplated by the decedent that his wife would surrender and cash the policy in his state of health. It could be cashed in in 1935 for about $25,000 and at his death was worth $50,000. No one with a vestige of business instinct would expect this to be the decedent's intention in his state of health and at his age. Rather, the decedent must surely have contemplated his wife would hold the policy till his

542

death. This takes on the aspect of a testamentary disposition. When there are two motives in making a gift, one a motive related to purposes associated with life and the other related to the disposition of property in anticipation of death, as there are in the present case, the solution lies in the determination as to which is the dominant motive. United States v. Wells, 283 U.S. 102, 103, 118, 51 S.Ct. 446, 75 L.Ed. 867; First Trust & Deposit Co. et al. v. Shaughnessy, supra; Treasury Regulations 80 (1937 Ed.) Art. 15.

Beyond any presumption and aside from any question of burden of proof, I conclude that on the facts here the decedent in assigning the policy to his wife was distributing the proceeds of the policy in contemplation of death.

One other aspect: What amount of the proceeds of this policy are to be included in the return? A gift in contemplation of death is included in a decedent's gross estate at its value at the time of death and not at its value at the time of gift as contended for by the plaintiff. Milliken v. United States, 283 U.S. 15, 51 S. Ct. 324, 75 L.Ed. 809; Igleheart v. Commissioner of Internal Revenue, 5 Cir., 77 F.2d 704, 711; Treasury Regulations 80, Art. 15; cf. Central Hanover Bank & Trust Co. v. Kelly, May 3, 1943, 63 S.Ct. 945, 87 L.Ed. ——.

However, Regulations 80, Art. 15, states: "If the transferee has made additions to the property, or betterments, the enhanced value of the property due thereto should not be included". Consequently, the portion of the value of the policy at the death of the decedent which the two premiums paid by Mrs. Liebmann in 1936 and 1937 bear to the total amount paid for the policy should be excluded from the gross return.

Judgment accordingly.