EDITH THOMSON AND HAWAIIAN TRUST COM-PANY, LIMITED, *v.* WILLIAM C. McGONAGLE, TREASURER OF THE TERRITORY OF HAWAII.

No. 2182.

ARGUED SEPTEMBER 23, 1935.          DECIDED OCTOBER 21, 1935.

COKE, C. J., CIRCUIT JUDGE METZGER IN PLACE OF BANKS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS, AND CIRCUIT JUDGE CASE IN PLACE OF PETERS, J., DISQUALIFIED.

This cause comes before us by submission on an agreed statement of facts entered into between Edith Thomson and Hawaiian Trust Company, Limited, trustees, and William C. McGonagle, treasurer of the Territory of Hawaii, who is also collector of inheritance taxes in the Territory. The facts, over which there is no controversy, may be summarized as follows: James Buchanán Thomson, a resident and citizen of the Territory of Hawaii, died at Honolulu on September 23, 1932, and left surviving him his widow Edith Thomson, one of the trustees above named, and two adult children, namely, Douglas Buchanan Thomson and Edith Thomson, all of whom were also residents and citizens of Hawaii. The estate of James Buchanan Thomson, deceased, was at the time of his death insolvent, the indebtedness, including expenses of administration, exceeding the value of the assets by approximately $30,000. Prior to May 19, 1930, Mr. Thomson had taken out a number of policies of insurance on his life, the same being payable in event of death to Edith Thomson, his wife. On the last-named date he executed a life insurance trust agreement naming his wife and the Hawaiian Trust Company, Limited, as trustees and at the same time caused the beneficiary of some of his life insurance policies to be changed so that in the event of his death they would be payable to the Hawaiian Trust Company, Limited, as corporate trustee under the life insurance trust agreement. By the provisions of the trust agreement the corporate trustee was required to collect the proceeds payable on the policies following the death of insured and the trustees were directed to invest and reinvest the proceeds and to use the income and principal for the benefit of the widow and children of the insured. The insured reserved the right during his lifetime to change the beneficiary of the policies which were made payable to the corporate trustee. He also reserved the right to terminate the trust and revoke the transfer of the policies.

The insured paid all premiums due under the policies prior to his death.

Concurrently with the execution of the trust agreement the deceased also executed his last will and testament disposing of the property of his estate in the same manner provided for in the trust instrument. This fact is of slight, if any, importance because the entire estate devised was required to meet the estate obligations, hence the sole property, subject to an inheritance tax, if any, is the net estate received by the trustee.

After the death of Mr. Thomson the Hawaiian Trust Company, Limited, as corporate trustee realized from the policies so held by it in its trust capacity as aforesaid the sum of $67,456.73, which amount thus became the original corpus of the trust property, but because of certain proper deductions the net amount of the estate, if any, subject to territorial inheritance tax, is the sum of $51,438.68 and the amount of the inheritance tax thereon would be $586.78. The sole question, therefore, presented by the submission is: Are the proceeds of the policies on the life of Mr. Thomson, which after his death were paid to the Hawaiian Trust Company, Limited, as trustee under said life insurance trust agreement, properly included in the estate of Thomson for inheritance tax purposes and subject to inheritance tax under the laws of Hawaii? Section 2060, R. L. 1935, provides in part as follows: "All property which shall pass by will or by the intestate laws of the Territory, from any person who may die seized or possessed of the same while a resident of the Territory, or which, being within the Territory, shall pass, whether by the laws of the Territory or otherwise, from any person who may so die while not a resident of the Territory, or which or any interest in or income from which, shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor, vendor, or bargainer,

or intended to take effect in possession or enjoyment after such death, to any person or persons, * * * shall be and is subject to a tax, * * * and such tax shall be and remain a lien upon the property passed or transferred until paid, and all administrators, executors, and trustees of every estate so transferred and the person to whom the property passes or is transferred or passed shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed."

We deem it unnecessary to decide whether or not the transfer in question was made in contemplation of death. The one question is: Did the deceased, having the power to do so, transfer the property in question by deed, grant, sale or gift intending that the possession or enjoyment thereof by the grantees should take effect after his death, or in other words, was the sum of $51,438.68 transferred by Thomson to his widow and children through the medium of a trustee with intent that they should possess or enjoy the property subsequently to his demise? The answer will be determinative of the issues of law involved here.

Counsel for the trustees argue that in making the policies payable to a trustee under the trust agreement the insured did not transfer the proceeds of the policies which ultimately were realized from the policies because at the date of the trust instrument he did not own the fund and possessed no right thereto which he could transfer within the purview of the inheritance tax statute.

The decisions of the state courts on the subject are in hopeless disagreement. Were we to adopt the doctrine announced by the courts of New York in *In re Haedrich's Estate,* 236 N. Y. S. 395, and *In re Voorhees' Estate,* 193 N. Y. S. 168, we would necessarily sustain the position of the trustees. If, on the other hand, we follow the rule laid down by the supreme court of New Jersey in *Fagan* v.

*Bugbee,* 143 Atl. 807, we must conclude that the sum in question is subject to a territorial inheritance tax. In the *Fagan* case the New Jersey court had before it a statute which corresponds in all essential features to our own and the facts, for every practical purpose, are identical with those involved in the present controversy. The decisions in these two separate jurisdictions cannot be harmonized. They squarely collide.

The Supreme Court of the United States in *Chase National Bank* v. *United States,* 278 U. S. 327, 334-338, has, as we read its decision, adopted the New Jersey rule and thus disposed of the controversy in this jurisdiction. In the *Chase National Bank* case the court was considering a controversy involving a Federal transfer tax under section 401 of the Revenue Act of 1921 which imposed a tax upon the transfer of the net estate of every decedent dying after the passage of the Act, etc. While it is true that not only the Federal statute but the facts involved in the *Chase National Bank* case were dissimilar to those in the present controversy, the Federal Supreme Court enunciated principles of law which have direct application to the present controversy. In that case, as here, it was contended that the insured, prior to his death, was the owner of no property which he might transfer, that no interest passed from him to any beneficiaries upon his death since the property rights in the policies were already in the beneficiaries. The court disposed of this argument, saying: "It is true, as emphasized by plaintiffs, that the interest of the beneficiaries in the insurance policies effected by decedent 'vested' in them before his death and that the proceeds of the policies came to the beneficiaries not directly from the decedent but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were him-

self the beneficiary of them. * * * A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, * * * is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death. * * * Such an outstanding power [the power of disposition reserved exclusively to the transferor for his own benefit] residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers. But the plaintiffs say that the tax here must be deemed to be a tax on property because the beneficiaries' interests in the policies were not transferred to them from the decedent, but from the insurer, and hence there was nothing to which a transfer or privilege tax could apply. Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. * * * We think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains

control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, a completion of that shifting of the economic benefits of property which is the real subject of the tax."

It is conceded by both parties that where the proceeds of a life insurance policy are made payable to a beneficiary designated in the policy of insurance and the beneficiary takes under the terms of the contract of insurance the fund is not subject to inheritance tax under the local statute. It is likewise conceded that where the policy is made payable to decedent's estate, executors, administrators or legal representatives and passes under the provisions of his last will and testament or under the intestate laws of the Territory the inheritance is taxable. It must also be admitted that an inheritance tax is likewise payable under section 2060, R. L. 1935, on all property which shall be transferred to any person or persons in trust or otherwise by deed, grant, sale or gift intended to take effect in possession or enjoyment after the death of the donor. The transfer in the present case was consummated through the medium of an *inter vivos* agreement. It is immaterial that by the terms of the grant the trustee acquired the legal title to the property. It is clear that the equitable title and the beneficial use passed, upon the death of the donor, to his widow and children and they immediately became entitled to the enjoyment thereof.

Our attention has been directed to the recent decision of the supreme court of the State of Washington in *In Re Killien's Estate,* 35 Pac. (2d) 11, 20, which supports and is made up largely of quotations from the New York decisions in *Voorhees' Estate* and *Haedrich's Estate, supra.* While the Washington court repudiates the doctrine laid

down in the *Fagan* case, *supra,* it rests its decision on the provisions of a Washington statute (Rem. Rev. Stat. § 11201) exempting from inheritance tax the proceeds of all life insurance policies except those paid to the estate of deceased. In the light of the Washington statute, the ultimate conclusions reached by the supreme court of that State are undoubtedly sound. But the court's comment on the decision of the supreme court of New Jersey is not impressive. The Washington court proceeds to say: "It is significant that chapter 135, p. 352, Laws of 1929, which is now section 11201-1, Rem. Rev. Stat., was enacted by our legislature directly following the decision in the Fagan v. Bugbee case. Like the statute of New Jersey, adopted in April of the same year, our statute was doubtless designed to foreclose any claims that might be raised under the Fagan v. Bugbee decision." The Washington court further quotes from "Inheritance and Transfer Tax Service," published by Prentice-Hall, Inc., under the heading of "Life Insurance Trusts," as follows: "The tendency seems to be for the states to enact legislation which exempts life insurance proceeds from taxation if payable directly or through a trustee. Within the past few years the following states have enacted such statutes: California, Colorado, Delaware, Indiana, New Jersey, Ohio, Oregon, Pennsylvania, Washington and Wyoming." Hawaii has no such exemption statute. If the decision of the supreme court of New Jersey in the *Fagan* case is unsound, it is pertinent to inquire what purpose was served by the enactment of the exemption statute by the legislature of the State of Washington following the rendition of the *Fa-*. *gan* opinion. Obviously the legislature of the State of Washington, as well as the lawmaking bodies of the other States which enacted similar exemption legislation, was not indulging in mere pastime. If we apply to the present controversy the principles of law enunciated by the

Federal Supreme Court in the *National City Bank* case, *supra* (and it is our duty to do so, see *Colburn* v. *U. S. F. & G. Co.,* 25 Haw. 536, 543), it follows that the Territory is entitled to recover the tax in dispute.

We therefore conclude that the property in question is subject to an inheritance tax under the provisions of the Hawaii statute. Judgment will be entered accordingly.

*L. Jenks* (*Prosser, Anderson, Marx & Wrenn* on the briefs) for the trustees.

*J. V. Hodgson,* Deputy Attorney General (*W. B. Pittman,* Attorney General, and *M. E. Winn,* Deputy Attorney General on the brief), for the territorial treasurer.