Moses L. Parshelsky, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 103476.   Promulgated February 26, 1942.

*Lawrence A. Baker, Esq.*, for the petitioner.
*Thomas H. Lewis, Jr., Esq.*, for the respondent.

460

[redacted]

OPINION.

DISNEY: The petitioner and his brother each invested $200,000 in contracts of annuity. The petitioner applied for and received contracts known as Exhibits 6 to 10 and his brother applied for and received contracts known as Exhibits 1 to 5. This was done by agreement. Each made his brother annuitant, with himself and his estate beneficiary or remainderman if he survived the brother. The cost of the annuity for life, the refund annuity (annuity payable after annuitant's death) to petitioner, and to the brother dependent upon survival, is shown by the evidence.

In the taxable year the petitioner received from contracts 1 to 5 the sum of $14,980 and from contracts 6 to 10 the sum of $14,390.50. The question is to what extent such sums constitute taxable income.

The respondent, having asked for an increased deficiency, has the burden of proof in that respect. He argues, in effect, that, though each brother appears as applicant for the contracts which name his brother as annuitant and himself as beneficiary, if he survive, looking to substance it appears that in fact each brother purchased those contracts in which he is annuitant and his estate a contingent remainderman; that therefore the $200,000 paid by the petitioner is to be considered paid for the different privileges conferred by the contracts in the proportions which nominally those privileges cost the brother; that out of the $200,000 paid, petitioner in substance paid $170,141.64 for the annuity for himself, $3,685.08 for the right

in his estate to receive payment after his death if he survive the beneficiary-brother, and $26,173.28 for the right of the beneficiary-brother (or his estate) to receive payment if he survive the petitioner; that the latter right, so costing $26,173.28, was reciprocal with, and in effect exchanged for, the same right in the contracts purchased nominally by petitioner but in substance by his brother, and that therefore his brother transferred that right to him, within the intendment of section 22 (b) (2), Revenue Act of 1938.[1] Respondent therefore argues that, since the petitioner survived his brother and received the payments, he received them under a "transfer" and must be taxed upon the full amount ($14,390.50) received in that respect in the taxable year, since prior thereto he had received from the contracts more than the consideration paid for that right, i. e., the $26,173.28 paid for the reciprocal right under the contracts in fact purchased by him; and, finally, as to the $14,980 received upon annuities, that under section 22 (b) (2), *supra*, as to tax upon annuities, the petitioner is taxable upon 3 percent of the amounts paid for the right of the petitioner and his estate to the payments to be received if he survived the brother. That amount should be $6,000, he argues, because the whole $200,000 was paid for the contracts in general, and the tax should not be diminished because only $170,141.64 was in a sense applicable to the annuity.

To this theory the petitioner in effect replies that it is not shown that petitioner purchased in substance the contracts applied for and received by his brother, but that each paid for what he applied for and received; that petitioner invested $200,000 in the contracts and, therefore, there being no "transfer" but only annuities, the maximum tax should be 3 percent of $200,000 or $6,000; or, if the tax should be laid upon the cost of the contracts purchased by his brother, that there was no possibility of profit in three of the contracts purchased

---

[1] SEC. 22. GROSS INCOME.

 \*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

 \*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideraton paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

by himself and, the other two not being straight annuities, no tax is due on more than the five contracts purchased by the brother. The petitioner argues that no evidence establishes any reason why each of the brothers should be considered to have purchased the contracts applied for by the other. He challenges respondent's view that the difficulties of the two brothers with creditors, and the Government as to unpaid income taxes, and provisions in the contracts for escape of the proceeds of such contracts from liability to creditors, offer proof that there was such reciprocal purchase of the contracts.

The respondent, in the alternative, contends that if it be considered that there was no "transfer" within the language of section 22 (b) (2), then the tax should be laid upon 3 percent of the entire consideration, $400,000 paid by both brothers, on the theory that the Act of 1938, different in that respect from earlier law, does not limit the tax to consideration paid by the recipient of the annuity. *Title Guarantee & Trust Co., Executor*, 40 B. T. A. 475, is cited as authority.

Disposing first of the alternative, we do not find in the case last cited sufficient authority to bear out respondent's view. It is true that there the 3 percent was computed upon consideration paid by another, but the present question was not considered. The question there posed was that of constitutionality. Therefore we do not think the answer to the present question would be well based upon that opinion. Though there is some indication in committee reports that the statute enacted in 1938 is not intended to limit the consideration to be considered in fixing the amount taxable, to that paid by the transferee, the conclusion to which we have come renders it unnecessary to consider the effect of the statutory expression in that regard.

After much consideration of this novel and interesting question, we have arrived at the conclusion that the petitioner must be considered as the purchaser of the contracts which his brother applied for and received, but that the whole $200,000 consideration can not be applied to the annuities purchased, only $173,826.62 (amount paid for annuity $170,141.64 plus $3,685.08 paid for right of annuitant's estate to payments) being the basis for 3 percent taxed against annuities, and that the remainder, or $26,173.28 must be considered the consideration paid for a transfer, by petitioner's brother, of the right to receive payment upon survival of the brother.

We find, in the difficulties and investigations as to taxes, the existence of creditors, and the provisions as to liability of the contracts to levy by creditors, reason for the "crossing" or reciprocity in the contracts. The contracts issued by the Mutual Life Insurance Co. provide partial escape from creditors in the prohibition of encumbrance, transfer, or anticipation by the annuitant. Those issued by the John Hancock Mutual Life Insurance Co. recite an agreement "in accordance with

the request of the applicant" that there shall, except in so far as contrary to state law, be no right in either annuitant or beneficiary to assign or encumber and that payment shall not be subject to levy against either. That this agreement is made upon request of the applicant shows that each brother had in mind the escape from creditors. The two contracts issued by the Aetna Life Insurance Co., one upon the application of each brother, each provides against levy by creditors of the annuitant, and against assignment, anticipation, or commutation by the annuitant. The provision indicates that it was by agreement with the applicant. The annuitant's interest was the prime interest, in a sense, in each contract. Clearly these contracts were reciprocal, for a like consideration paid by each brother for the other's benefit, and did not constitute gifts from either to the other. In our opinion the contracts were intentionally crossed, or purchased in the name of the brother by mutual agreement, and that petitioner in substance and fact purchased those applied for by his brother. *Lehman* v. *Commissioner*, 109 Fed. (2d) 99; *Purdon Smith Whiteley*, 42 B. T. A. 316; *Estate of Frederick S. Fish*, 45 B. T. A. 120. We therefore hold that the petitioner's tax should be computed upon a basis of 3 percent of the "annuity" rights. It is clear that that term as used in section 22 (b) (2) includes those rights arising after the death of the annuitant, whereby his estate, if he has survived the beneficiary, receives payment, for it is defined as "an allowance or payment from the income of a fund at specific periods and during a prescribed term." *Title Guarantee & Trust Co., Executor, supra,* quoting *Continental Illinois Bank & Trust Co.* v. *Blair,* 45 Fed. (2d) 345. Obviously the etymology of the word, from "annus" or year, indicates that its application is not limited to a life or lives. We are of the opinion that the 3 percent is to be computed on all of the $200,000 consideration paid by the taxpayer, except the amount that was paid for a "transfer" under the statute. To apply the 3 percent to the full $200,000 would be duplication. We hold that therefrom $26,173.28 was paid for a transfer from petitioner's brother. The petitioner, because he survived his brother, received $14,390.50 from the contracts in substance paid for by his brother. He received such right because of the provision, in the contracts in substance paid for by him, for a reciprocal right in the brother had he survived. Thus there was receipt of payment by him because of transfer of the contract to him. *Chase National Bank* v. *United States,* 278 U. S. 327. The evidence shows that more than the amount of the consideration had been recovered prior to the taxable year. Therefore, under the latter portion of section 22 (b) (2), the entire $14,390.50 was taxable to the petitioner in the year here involved.

The petitioner argues that under some of the contracts the petitioner can not recover more than the amount invested and therefore that section 22 (b) (2) should not be applied. We find no such distinction indicated in the statute. The amounts are annuities, in one case a transfer. We see no sound reason for not applying the statute as written.

Reviewed by the Board.

*Decision will be entered under Rule 50.*