CASRAY OIL CORPORATION v. ROYAL
INDEMNITY CO. et al.
No. 8046.

Supreme Court of Texas.

April 7, 1943.

Scars, Blades, Moore & Kennerly and
Fred W. Moore, all of Houston, for plaintiff in error.

Wood, Gresham, McCorquodale & Martin and Newton Gresham, all of Houston, for defendant in error Indemnity Co.

Vinson, Elkins, Weems & Francis,
Thomas Fletcher, and Fred R. Switzer,
all of Houston, for defendant in error
Switzer.

ALEXANDER, Chief Justice.

This is a garnishment case. Royal Indemnity Company, the garnishee, prevailed in the trial court, and that court allowed it an attorney's fee of $250 for the services of an attorney in the trial court, and further provided that in the event an appeal was taken from the judgment, the garnishee should recover the sum of $50 for the services of the attorney in the Court of Civil Appeals and $50 for the services of such attorney in the Supreme Court. The judgment was affirmed by the Court of Civil Appeals. 165 S.W.2d 244.

■ The Casray Oil Corporation, plaintiff in the lower court, assigned as error the action of the trial court in allowing the recovery of $100 for attorney's fees in the event of an appeal. It was upon this assignment that we granted the writ of error. However, since the granting of the writ the garnishee has remitted the $100 in controversy. Consequently, the question raised by the assignment has become moot.

The Court of Civil Appeals correctly decided all other points.

■ The judgments of the trial court and Court of Civil Appeals, as reformed by the remittitur, will be affirmed. The costs in the Court of Civil Appeals and Supreme Court will be assessed against the respondent Royal Indemnity Company.

HANSEN et al. v. BLACKMON, Tax
Assessor-Collector, et al.
No. 4211.

Court of Civil Appeals of Texas. El Paso.

May 28, 1942.

Rehearing Denied June 18, 1942.

Orgain, Carroll & Bell, of Beaumont (Will E. Orgain and B. D. Orgain, both of Beaumont, of counsel), for appellants.

Gerald C. Mann, Atty. Gen., and Cecil C. Rotsch and Billy Goldberg, Asst. Attys. Gen., for appellees.

PRICE, Chief Justice.

Appellant, Mrs. Adolph S. Hansen, individually, and as executrix of the estate of her deceased husband, sued appellees W.

T. Blackmon, Tax Assessor-Collector of Jefferson County, the State Comptroller, the State Treasurer, and the Attorney General, to recover the sum of $1,732.59, paid under protest by appellant as part of the inheritance tax due the State under the Inheritance Tax Law, Chap. 5, Title 122, R.C.S.1925, as amended by House Bill 990, Acts of the 46th Legislature, Regular Session, 1939, c. 13, p. 646, Vernon's Ann.Civ.St., art. 7117 et seq. The case was disposed of on an agreed stipulation as to the facts, which was substantially as follows:

Adolph S. Hansen, a resident of Jefferson County, Texas, died on April 29, 1940; appellant, his wife, was named the sole beneficiary in his will; as executrix on April 4, 1941, she paid to the County Collector of Jefferson County $4,553.93; this payment was in compliance with the order of the County Judge fixing said sum as part of the inheritance taxes due from the estate of Hansen; payment was made under protest; Mr. Hansen was insured by several insurance companies under policies providing for payment on the event of his death in the total sum of $110,441.17; appellant was beneficiary in these policies and has received the proceeds thereof; the deceased was married to appellant from a time prior to the taking out of any of said policies until his death; application for the policies and the insurance contracts were made by the deceased; all of the premiums were paid with funds of the community estate; in calculating the tax of $4,553.93, paid by appellant, there was included as property subject to tax $110,441.17, the proceeds of the policies, less $40,000 exemption provided for by law.

If only one-half of such excess should have been included, the tax was excessive to the extent of $1,732.59.

In view of our disposition of this case it is necessary and appropriate that at this point we pass upon a cross-assignment of error urged by the appellee.

By plea in abatement appellee challenged the right of appellant to pay the tax under protest and sue to recover it, contending that such suit was only authorized under art. 7057b, Vernon's Ann.Civ.St., when payment was made to the head of any department of the State Government, and that since, under art. 7132, R.C.S., inheritance taxes are required to be paid to the tax collector of the county whose county court has jurisdiction of the estate of decedent, and as payment was actually made to a county tax collector, who is not the head of any department of the State Government, appellant had no authority to maintain her suit. The court overruled the plea in abatement.

We think the plea in abatement was properly overruled. The suit authorized by sec. 2 of art. 7057b, R.C.S., Vernon's Ann. Civ.St. art. 7057b, § 2, is in effect a suit against the State, since judgment in a taxpayer's favor would operate directly as a liability of the State, and must of necessity be paid out of the State Treasury. Natl. Biscuit Co. v. State, Tex.Civ.App., 129 S. W.2d 494, reversed on other grounds 134 Tex. 293, 135 S.W.2d 687; 38 Tex.Jur. p. 857, § 36.

In such a suit the authority granted by the statute is jurisdictional, since it is elementary that the State cannot be sued without its consent.

In Lewis v. O'Hair, Tex.Civ.App., 130 S.W.2d 379, and in Walker v. Mann, Tex. Civ.App., 143 S.W.2d 152, writ refused, inheritance taxes were paid under protest to county collectors, and suit then instituted under art. 7057b to recover them as here.

In Lewis v. O'Hair, supra, the taxpayer recovered. In Walker v. Mann, supra, recovery was denied. In neither case was the right of the taxpayer to maintain the suit under art. 7057b questioned; but we think the judgments necessarily authoritatively determined that such right existed, since in each case the court would have been without jurisdiction if consent to sue the State granted by art. 7057b had been lacking.

These decisions in our opinion are conclusive against the contention of appellee.

As a basis for the collection of the tax the State relied upon the applicable part of art. 7117, R.C.S.1925, as amended in 1939, specifically as follows: "All property * * * including the proceeds of life insurance to the extent of the amount receivable by the executor or administrator as insurance under policies taken out by the decedent upon his own life, and to the extent of the excess over Forty Thousand Dollars ($40,000) of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life * * * which shall pass * * * by will or by the laws of descent or distribution * * * or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the

grantor or donor, shall, upon passing to * * * any person * * * be subject to a tax * * *."

Prior to the 1939 amendment of art. 7117, proceeds of life insurance policies payable to beneficiaries other than the decedent's estate were not subject to the inheritance tax. Insurance payable to beneficiaries other than the estate was made subject to such tax by the addition to art. 7117, in 1939, of the following language: " * * * including the proceeds of life insurance to the extent of the amount receivable by the executor or administrator as insurance under policies taken out by the decedent upon his own life, and to the extent of the excess over Forty Thousand Dollars ($40,-000) of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life * * *."

The above amendment was, beyond a doubt, adopted from the Federal Inheritance Tax Law.

The Federal law subjecting proceeds of insurance policies payable to beneficiaries other than the decedent's estate to the estate tax is found in the original Act of 1926, § 302, as amended by sec. 404 of the Revenue Act of 1934, to be found in Title 26, U.S.C.A. Internal Revenue Acts, page 227, and is as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated [omitting here classification of property not material to our inquiry]—* * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

In construing the Federal statute in regard to what portion of the proceeds of an insurance policy taken out by the husband in favor of the wife, premiums paid out of community property, was taxable, there was considerable confusion and disagreement in the Federal decisions.

On May 16, 1938, the Supreme Court of the United States, in the case of Lang v. Commissioner of Internal Revenue, 304 U. S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A. L.R. 319, construed the Federal statute in

the respect we have here in question. The opinion was written for the court by Mr. Justice McReynold, and was delivered in response to a question certified by the United States Circuit Court of Appeals. As stated, the facts were in all respects the same as are here involved. The property rights of the parties were governed by the law of the State of Washington, where the community property law is and was in force.

The question certified, as follows: "Must the total or only one-half of the proceeds collected under the insurance policies issued after marriage be reckoned as part of his gross estate, the wife being the sole beneficiary and all premiums having been paid from community funds?" The answer: "To this we answer, only one-half."

Since the rendition of this opinion the United States Circuit Courts of Appeals and other agencies of the Government have, of course, endeavored to consistently follow same. See DeLappe v. Commissioner, 5 Cir., 113 F.2d 48; Estate of Shearn Moody, Decd. v. Commissioner, 42 B.T.A. 987.

The DeLappe case was under the law of Louisiana and the Moody case under that of Texas. In each case only one-half of the proceeds of insurance policies payable to the wife, the premiums having been paid from community funds, were held to be includible for the purpose of the Federal estate tax.

Prior to the time we adopted the Federal provision as part of our law, the United States Supreme Court had decided that where a policy was taken out in favor of the wife by the husband, the premiums paid out of community funds, that only one-half of the proceeds was taxable under the Federal law.

It is fundamental, we take it, that where a statute is adopted from another jurisdiction, the construction made by the courts of that jurisdiction prior to the adoption may be looked to in its construction, and such construction is entitled to great weight. 39 Tex.Jur. pp. 264–266, § 140.

An examination of the community property laws of Washington, Louisiana and Texas in the matters pertinent here does not disclose a basic or essential difference.

In its disposition of the case of the Estate of Shearn Moody, Decd. v. Commissioner, arising under the law of Texas, su-

pra, the Board of Tax Appeals follow the law as announced in Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319.

■ Unless there is some strong and compelling reason to the contrary, we feel, in view of the fact the Texas statute was borrowed from the Federal Law, that in its construction the decisions of the United States Supreme Court should be followed. Especially is this so where that construction was made prior to the adoption of the Federal provision.

It is true that under our statute the thing burdened with the tax is the right to receive or the right of succession, as distinguished from the right of transfer. State v. Hogg, 123 Tex. 568, 70 S.W.2d 699, 72 S.W.2d 593; Bethea v. Sheppard, Tex.Civ. App., 143 S.W.2d 997, 998, writ refused.

In short, the distinction between the Federal Act and the State Act as to the incidence of the tax is that in the former the incidence of the tax is on the power or right to transfer, and in the latter on the right or privilege to receive. But, after all, the two laws are similar, in that the transfer taxed is of the same thing, the receipt whereof is taxed.

In order that title to property be received, it is necessary that there be the exercise of the power of transfer by someone. Within the meaning of the Federal Law, the vesting of title to the proceeds of an insurance policy taken out by the deceased, that is, paid for by him, is a transfer by deceased, or tantamount thereto. It might be more logical to say, has the legal equivalency under the Federal statute of a transfer. This is made so by the positive provision of the Federal statute.

Our statute, by its own force, makes the collection of the proceeds by the beneficiary of the policy equivalent to a receipt from the estate of the decedent.

■ Under the Federal law, in a case such as we have here presented, the question is: What has been transferred to the beneficiary? In the case of Lang v. Commissioner, supra, the United States Supreme Court has given an authoritative answer to the question; that is, that where a policy is taken out by the decedent for the benefit of his wife, the premiums paid out of community funds, only one-half thereof is transferred by the death of the assured.

In the construction of our statute we are of the opinion that the distinction as to the incidence of the two taxes is not such a distinction as warrants a construction of our law variant from the authoritative construction of the Federal Law.

■ In this case the creative force of one-half of this fund was the funds of appellant. In taking out these policies her husband, tentatively at least, gave her his community interest. This gift was never revoked. She did enjoy the privilege of succeeding to this gift upon his death; but insofar as her community funds created same, she did not, by her husband's death, succeed thereto. Her husband at all times prior to his death had the power, within limits, to make a disposition of her community interest in the money devoted to the payment of these premiums to another. He elected to expend same for her benefit. True, if there was a privilege in the policies to change the beneficiary, its exercise could have defeated her interest. But even if there was such a power, he did not choose to exercise it and left her money invested for her benefit. One-half of the amount of these policies only represented, within the meaning of our statutes, "policies taken out by the decedent upon his own life." This is what appellant succeeded to upon the death of her husband. Upon this she has paid the tax exacted by the law, and paid in excess of such tax the sum of $1,732.59.

■ The apparent purpose of both the Congress and the Legislature in adopting the amendment to make the proceeds of insurance policies subject to tax was to subject to the tax property and capital that was being converted into an asset not subject thereto. The community interest of a surviving spouse was not then and is not now subject to the tax. There had been no evasion in that respect. If the community funds be invested in any other character of property, only one-half thereof is liable for the tax. It can hardly be supposed that the Legislature had an intention to subject by this amendment a community share that had not theretofore and is not now otherwise subject to it. If it be held the one-half of the proceeds of the policy arising as the result of the investment of the wife's one-half of the community funds is liable to the tax, then that interest becomes the lone and sole exception. Practically, it would result in taxing the survivor's share, which has never heretofore been permitted.

Under the laws of Texas, Washington and Louisiana, the United States Supreme

Court, in income tax matters, has recognized the right of the husband and wife to make separate returns. Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252.

It is therefore ordered that this case be reversed and rendered in favor of appellant in accordance with this opinion.

This case was originally referred to Judge McGILL, Special Commissioner, for report and recommendation. Judge McGILL recommended a different disposition thereof than that here made by the Court. We have, to the end that the parties and the Supreme Court may have the benefit of his views, requested that he embody same in writing, in the nature of a dissenting opinion.

McGILL, Special Commissioner.

I adhere to the views expressed in my opinion submitted to Chief Justice PRICE and Associate Justice SUTTON for approval. In that opinion an affirmance of the trial court's judgment was recommended. No reference was made to appellee's plea in abatement, but subsequently a memorandum was submitted which was in full accord with the disposition of this plea made by the Court and the reasons therefor. That opinion was also in accord with the Court's view that the holding of the Supreme Court of the United States in Lang v. Commissioner of Internal Revenue, cited by the Court, is controlling in a determination of the amount of the Federal estate tax due on the proceeds of life insurance policies taken out by the husband on his own life in which the wife is named beneficiary, where the premiums are paid from community funds in Texas. Since the Attorney General took a different position in his brief, I shall amplify the reasons for this view.

In Hopkins v. Bacon, Poe v. Seaborn, and Bender v. Pfaff, cited by the Court, the basis of the decisions is that under the local laws of Texas, Washington and Louisiana, as interpreted by the State courts of last resort, the interest of the wife in the community is a present vested interest, as distinguished from a mere expectancy, as in California. United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285.

Since the United States Supreme Court has recognized no distinction in the interest of the wife in the community in Texas, Washington and Louisiana in respect to the Federal income tax, it must logically follow that that Court will recognize no such distinction in respect to the Federal estate tax, and therefore its decision in Lang v. Commissioner of Internal Revenue will be followed if and when a similar case from Texas comes before that high tribunal.

It does not follow that the decision in Lang v. Commissioner of Internal Revenue should control or even be persuasive in the interpretation of our State inheritance tax statute.

In the opinion submitted it was conceded that because of the similarity of the language employed in the Federal and State statutes, the conclusion is irresistible that the 1939 amendment to art. 7117, R.C. S., was in fact adopted from the Federal Estate Tax Law. City of Tyler et al. v. St. Louis, S. W. Ry. Co., 99 Tex. 491, 91 S.W. 1, 13 Ann.Cas. 911. But the general rule that a statute adopted from another jurisdiction will ordinarily be given the same construction in Texas that it had received in the jurisdiction from which it was adopted (Tex.Jur. p. 264, § 140) is subject to the well recognized exception, and is inapplicable where the statute was enacted for a different purpose and applied to a different subject matter. 59 C.J. 1070, § 628; In re Pacific Telephone & Telegraph Co., D.C., 38 F.2d 833.

The distinction between the nature of the Federal estate tax and our State inheritance tax is fundamental.

The Federal estate tax is imposed upon the right of grantor or transferer to transfer property; while our inheritance tax is imposed upon the right to receive or succeed to the possession or enjoyment of property.

"Under the Federal Estate Tax Law, the primary question to determine is when the decedent or grantor parted with all property rights. Under our State Inheritance or Succession Tax Statute, the primary question is whether the transfer was made or intended to take effect in possession or enjoyment after the death of grantor." Bethea v. Sheppard, Tex.Civ.App., 143 S. W.2d 997, 998, 1002, writ refused.

This fundamental difference in the nature of the tax is explanatory of the Federal decisions following the reasoning of the Court in Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L. Ed. 405, 63 A.L.R. 388, and those fol-

lowing the case of Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934.

In the first line of decisions, the Federal estate tax has been sustained on the proceeds of insurance policies made payable to a named beneficiary where the insured paid the premiums and reserved the right to cancel the policy, or to secure a loan on it, or to obtain the cash surrender value, or to change the beneficiary. These decisions are based on the theory that until the time of his death the insured retained incidents of ownership in the policy which were terminated at his death, and that, therefore, at the time of his death, there was a shifting of beneficial interest or economic benefits which were subject to the transfer tax.

In the other line of decisions, where the insured did not reserve the right to change the beneficiary or any other incidents of ownership which he could have exercised at the time of his death, the proceeds were held not subject to the estate tax. See annotation 118 A.L.R. 324, at page 325 et seq.

Under our inheritance tax statute it is immaterial whether the insured retained the right to change the beneficiary or any other incidents of ownership. The interest of the beneficiary may have been completely vested during the lifetime of the insured. When the insured creates such vested interest is immaterial—if he postpones the right of possession or enjoyment of the beneficiary until after his death, the proceeds are subject to the inheritance or succession tax at or after his death. Such a situation is no different than the "irrevocable trust" mentioned in Bethea v. Sheppard, supra.

If the Federal decisions on which appellant relies are applicable here she should recover the entire amount of the tax paid, if she had paid it under protest and sought to recover it, since the agreed stipulation does not disclose whether the insured reserved the right to change the beneficiary or any other incidents of ownership. And under these decisions, in the absence of such reservation, no tax can be imposed.

Prior to the amendment of art. 7117, R. C.S., by the Act of 1939, no tax was imposed on any property other than that which had belonged to the grantor or donor. The amendment specifically imposed a tax on the proceeds of life insurance policies taken out by the decedent upon his own life to the extent of the excess over $40,000 of the amount receivable by beneficiaries other than his estate. Prior to the amendment no property was taxable unless it passed absolutely or in trust by will or by the laws of descent and distribution or by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor.

The amendment created another mode of transfer and subjected to tax property transferred other than property which had theretofore belonged to the grantor or donor. The new mode of transfer was by contract of the grantor or donor.

The theory advanced in the opinion of the Court, that in taking out the policies the husband was making a gift to the wife of his interest in community funds to which she succeeded upon his death, is repugnant to the contract of insurance itself. Receipt of proceeds of an insurance policy by a named beneficiary is not by reason of any gift of the insured, but because of the insurance contract; the transfer is made by the contract—not by gift. Contract has been recognized as a method of transfer in inheritance tax statutes. See In re Gemmell's Estate, 123 N.J.Eq. 315, 197 A. 428.

The amendment "does not impose the tax on the transfer of the property, nor on the passing of the property from the grantor, nor on the right to become beneficially interested in the property, but imposes the tax upon the passing of the property or interest therein when 'made or intended to take effect in possession or enjoyment after the death of the grantor.'" Bethea v. Sheppard, supra.

Clearly, rights to the proceeds of life insurance policies created by contract of the insured are intended by the insured to take effect in possession or enjoyment by the beneficiary after the death of the insured.

It seems to me that it is a narrow construction and an unwarranted implication of legislative intention to hold that the source of the consideration paid by the insured for the benefits to be derived from such contracts should be determinative of the tax imposed. Courts, in determining the existence of the event upon which a succession tax has been based, should not permit themselves to be restricted by technical refinements of title arising from the consideration for which the transaction was effected, but should be more concerned with the practical advantages that accrue

to the taxpayer from the devolution of the property which passed.

The opinion assumes that the purpose of Congress and of the Legislature in adopting the amendment was to subject to the tax property and capital that was being converted into assets not subject thereto. The court then reasons that since the community interest of a surviving spouse was not then and is not now subject to the tax, it cannot be supposed that the Legislature, by this amendment, intended to subject a community share to the tax when such share had not theretofore and is not now subject to it; that to do so would permit the taxing of an investment of the wife's one-half of community funds—not permitted in any other instance. In this assumption and conclusion the court fails to make any distinction between the payment of premiums on life insurance policies with community funds and the investment of community funds. The primary purpose of life insurance is not investment, but protection. If this were not so, there could be no valid reason for the $40,000 exemption on which all of the premiums may be paid by the husband's separate funds. The inclusion of this exemption in the statute negatives any legislative intention to regard the proceeds of life insurance policies as the fruits of investment.

I cannot approve a statutory construction which would impute to the Legislature a Lilliputian attempt to increase the revenues of the State by placing only that part of the premiums on life insurance policies which were paid by the insured and which had theretofore escaped taxation in an inheritance-tax straight jacket. The words, "taken out by the decedent," on which appellant relies, it seems to me, should be given no broader meaning than their literal equivalent, "contracted for by the decedent." Such construction does not require a strained interpretation of the language of the statute, and is in harmony with the general purposes of our inheritance-tax statute. The interpretation placed on these words by the Federal Courts should not be applied when they are used in a statute relating to a subject matter entirely different than that which the Federal Courts considered.

Believing that the court erred in reversing the judgment of the trial court, and that the opinion places a construction on our Inheritance Tax Statute contrary to the views expressed in the opinion in Bethea v. Sheppard, supra, approved by the Supreme Court by the refusal of a writ of error, and in response to the gracious request of the Court, these views are respectfully, yet confidently, recorded.